**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **ROBERT WESTEFER, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL NO. 00-162-GPM** |
| | ) | |
| **DONALD SNYDER, et al.,** | ) | **Consolidated with:** |
| | ) | **CIVIL NO. 00-708-GPM** |
| **Defendants.** | ) | |

# MEMORANDUM AND ORDER

**MURPHY, Chief District Judge:**

This matter is before the Court on the motion for class certification brought by Plaintiffs Robert Westefer, Mark Von Perbandt, Alejandro Villazana, Armando Tinajero, Corey Taylor, Michael Sparling, Joe Sorrentino, Anibal Santiago, Tyshawn Ross, Edward Rodriguez, Vincente Rodriguez, Vincent Reyna, Alex Muller, William Lasley, Ted Knox, Michael Johnson, Eugene Horton, George Harper, Timothy Hall, John Gill, Larry Gambrell, Larry Foutch, Robert Felton, Kennard Combs, Maurice Coleman, Laverne Clayton, Gary Clark, Mary Chapman, as the administrator of the estate of Marcus Chapman, Roosevelt Burrell, Finner Bryant, Larry Brown, and Aryules Bivens (Doc. 122).  For the following reasons, the motion is **GRANTED**.

## INTRODUCTION

Plaintiffs are past or present inmates of the closed maximum security unit at the Tamms Correctional Center ("Tamms") in Tamms, Illinois.[1]  Defendants Donald Snyder, Odie Washington,

---

1.    Plaintiffs' operative complaint (Doc. 144) reflects that Plaintiffs Robert Westefer, Armando Tinajero, Michael Sparling, Tyshawn Ross, William Lasley, Eugene Horton, Larry Gambrell, Larry Foutch, Robert Felton, Laverne Clayton, Gary Clark, Roosevelt Burrell, Finner Bryant, and Aryules Bivens have been transferred out of Tamms since this action originally was filed.  Mary Chapman

Michael V. Neal, George DeTella, Michael O'Leary, Dwayne Clark, Jerry Gilmore, Lamark Carter, Rodney Ahitow, Roger Cowan, Thomas Page, Roger Walker, Salvador Godinez, Guy Pierce, Barbara Hurt, Rick Orr, Ronald Meek, Jason Garnett, Deirdre Battaglia, Eddie Jones, Don Hulick, and Roger Zimmerman are past or present officers and employees of the Illinois Department of Corrections ("IDOC"). Plaintiffs bring this action pursuant to 42 U.S.C. § 1983. Count One of Plaintiffs' operative complaint alleges that certain Plaintiffs were assigned to Tamms in retaliation for exercising their First Amendment right to file grievances and lawsuits regarding the conditions of their confinement. Count Two alleges that Plaintiffs were assigned to Tamms in violation of their Fourteenth Amendment procedural due process rights. Plaintiffs have moved pursuant to Rule 23(b)(1) and (b)(2) of the Federal Rules of Civil Procedure for certification of a class action as to their request for declaratory and injunctive relief on their procedural due process claims. As defined in Plaintiffs' operative complaint, the proposed class includes, "All inmates who have been transferred to Tamms Correctional Center since January 1, 1998, and all prisoners who will be transferred to Tamms in the future." Doc. 144 ¶ 140.

<u>DISCUSSION</u>

A.      **Standard Governing Class Certification**

Rule 23 of the Federal Rules of Civil Procedure sets forth the prerequisites for a class action: (1) a proposed class must be so numerous that joinder of all members is impracticable ("numerosity"); (2) there must be a question of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties must be typical of the claims or defenses of

---

is the mother of Marcus Chapman, who was originally a Plaintiff in this case until he committed suicide while in segregation at Tamms on August 26, 2004, whereupon Mrs. Chapman was appointed the administrator of his estate.

the class ("typicality"); and (4) the representative parties must fairly and adequately protect the interests of the class ("adequacy").  *See* FED. R. CIV. P. 23(a).  In addition to satisfying these four elements, a party seeking class certification must also demonstrate that the action falls within one of the categories enumerated in Rule 23(b).  *See* FED. R. CIV. P. 23(b)(1)-(3).  *See also Chandler v. Southwest Jeep-Eagle, Inc.*, 162 F.R.D. 302, 306 (N.D. Ill. 1995); *Jefferson v. Security Pac. Fin. Servs., Inc.*, 161 F.R.D. 63, 67 (N.D. Ill. 1995).  "When appropriate . . . an action may be brought or maintained as a class action with respect to particular issues, . . . and the provisions of [Rule 23] shall then be construed and applied accordingly."  FED. R. CIV. P. 23(c)(4).

A party seeking class certification bears the burden of proving that each of the requirements under Rule 23 has been met, *see General Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 160 (1982); *Trotter v. Klincar*, 748 F.2d 1177, 1184 (7th Cir. 1984), and a failure by the movant to satisfy any one of these prerequisite elements precludes certification.  *See Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993); *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993).  "The court maintains broad discretion to determine whether a proposed class satisfies the requirements and should err in favor of maintaining class actions."  *Guillory v. American Tobacco Co.*, No. 97 C 8641, 2001 WL 290603, at *2 (N.D. Ill. Mar. 20, 2001).  *See also First Interstate Bank of Nev., N.A. v. Chapman & Cutler*, 837 F.2d 775, 781 (7th Cir. 1988); *Patterson v. General Motors Corp.*, 631 F.2d 476, 480 (7th Cir. 1980); *King v. Kansas City S. Indus., Inc.*, 519 F.2d 20, 25-26 (7th Cir. 1975).

In evaluating a request for class certification, a court must not weigh the merits of a case, *see Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974); *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 895 (7th Cir. 1981), although the court must

"understand the claims, defenses, relevant facts and applicable substantive law in order to make a meaningful determination of certification issues." *Dhamer v. Bristol-Myers Squibb Co.*, 183 F.R.D. 520, 530 (N.D. Ill. 1998). *See also Rahim v. Sheahan*, No. 99 C 0395, 2001 WL 1263493, at *10 (N.D. Ill. Oct. 19, 2001) (quoting *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001)) (explaining that, in evaluating a request for class certification, a court must make a "preliminary inquiry … that has at its focus not the substantive strength or weakness of the plaintiffs' claims but rather the merits of those allegations that bear on the suitability of a case for class treatment under Rule 23(a) and (b)."). Finally, even where the elements of class certification are not in dispute, a court has a duty to evaluate independently the proposed class to ensure its compliance with the requirements of Rule 23. *See Davis v. Hutchins*, 321 F.3d 641, 648-49 (7th Cir. 2003); *Chapman v. Worldwide Asset Mgmt., L.L.C.*, No. 04 C 7625, 2005 WL 2171168, at *1 (N.D. Ill. Aug. 30, 2005).

### B.    Rule 23(a) Requirements

#### 1.    Numerosity

Rule 23(a) requires that a proposed class be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). "[A] class of more than 40 individuals raises a presumption that joinder is impracticable." *Carrier v. JPB Enters., Inc.*, 206 F.R.D. 332, 334 (D. Me. 2002). *See also Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) ("[W]hile there is no fixed numerosity rule, . . . generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors."). Correspondingly, courts have found the numerosity element satisfied where the putative class would number in the range of as few as ten to forty class members. *See, e.g., Swanson v. American Consumer Indus.,*

*Inc.*, 415 F.2d 1326, 1333 (7ᵗʰ Cir. 1969) (forty class members); *Hendricks-Robinson v. Excel Corp.*, 164 F.R.D. 667, 671 (C.D. Ill. 1996) (thirty-eight class members); *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986) (twenty-nine class members).

In evaluating whether Rule 23(a)(1) is satisfied, a court is entitled to "make common sense assumptions in order to find support for numerosity." *Cannon v. Nationwide Acceptance Corp.*, No. 96 C 1136, 1997 WL 139472, at *2 (N.D. Ill. Mar. 25, 1997). *See also Keele v. Wexler*, No. 95 C 3483, 1996 WL 124452, at *3 (N.D. Ill. Mar. 19, 1996). "[A]lthough the one who asserts the class must show some evidence or reasonable estimate of the number of class members, if a plaintiff cannot provide precise numbers, a good faith estimate is sufficient to satisfy the numerosity requirement where it is difficult to assess the exact class membership." *Miller v. Spring Valley Props.*, 202 F.R.D. 244, 247 (C.D. Ill. 2001). In this case, Plaintiffs' uncontradicted assertion is that the population of Tamms has been between two hundred and three hundred inmates since the prison opened, and that the current population of Tamms is two hundred and thirty-three inmates. In light of the current population of Tamms, as well as the population of inmates in IDOC custody likely to be transferred to Tamms in the future, it is reasonable to assume that the proposed class in this case numbers in the very least hundreds of persons. Therefore, the Court finds that the requirement of numerosity is met.

### 2.    Commonality

Under Rule 23(a), "questions of law or fact common to the class" must exist before a class may be certified. FED. R. CIV. P. 23(a)(2). "[T]he commonality requirement has been characterized as a 'low hurdle' [that is] easily surmounted," *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D. Ill. 1996) (quoting *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992)),

because, to satisfy commonality, a plaintiff need only show that there is "at least one question of law or fact common to the class." *Arenson v. Whitehall Convalescent & Nursing Home, Inc.*, 164 F.R.D. 659, 663 (N.D. Ill. 1996). *See also Portis v. City of Chicago*, No. 02 C 3139, 2003 WL 22078279, at *2 (N.D. Ill. Sept. 8, 2003); *In re VMS Sec. Litig.*, 136 F.R.D. 466, 473 (N.D. Ill. 1991). Generally commonality is satisfied as long as there is a "common nucleus of operative fact" as to the class members' claims. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). *See also Allen v. City of Chicago*, 828 F. Supp. 543, 551 (N.D. Ill. 1993). Class certification will not be defeated solely because there are some factual variations among the grievances of the class members. *See Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998); *Patterson*, 631 F.2d at 481. Also, "[w]hen a 'question of law refers to standardized conduct by defendants toward members of the class, a common nucleus of operative facts is typically presented, and the commonality requirement is usually met.'" *Maxwell v. Arrow Fin. Servs., LLC.*, No. 03 C 1995, 2004 WL 719278, at *4 (N.D. Ill. Mar. 31, 2004) (quoting *Von Moore v. Simpson*, No. 96 C 2971, 1997 WL 570769, at *3 (N.D. Ill. Sept. 10, 1997)).

This case clearly presents common questions of fact and law. Plaintiffs allege that they and other prisoners were assigned to Tamms without due process of law. They assert that the conditions of confinement at Tamms constitute an atypical and a significant hardship in relation to the ordinary incidents of prison life, such that they have a due process liberty interest in avoiding placement at the prison, and that adequate procedures have not been employed by IDOC to protect that interest. *See Wilkinson v. Austin*, 125 S. Ct. 2384, 2393-98 (2005). The chief questions presented by this case are whether Plaintiffs and the class have a liberty interest in avoiding assignment to Tamms and, if so, what procedures are constitutionally required to safeguard that interest. *See Westefer v. Snyder*,

422 F.3d 570, 589-90 (7th Cir. 2005).  The Court agrees with Plaintiffs that these common questions satisfy the requirements of Rule 23(a)(2).  *See Alliance to End Repression v. Rochford*, 565 F.2d 975, 978-79 (7th Cir. 1977) (the requirement that there be a common question of law or fact was satisfied when the complaint in a class action alleged the existence of an unconstitutional pattern and practice of intelligence gathering by law enforcement authorities concerning various law-abiding organizations and individuals, fostered by the existence of a conspiracy among various federal and state law enforcement agencies); *Johns v. DeLeonardis*, 145 F.R.D. 480, 483 (N.D. Ill. 1991) (finding commonality satisfied in a putative class action by gypsies against police officers alleging unlawful searches and invasions of privacy arising from a police raid where "[t]he question of whether the raid violated the constitutional rights of the Plaintiffs is the sole issue presented by this case."); *Patrykus v. Gomilla*, 121 F.R.D. 357, 359-60, 361 (N.D. Ill. 1988) (a class of all persons who were subjected to any of the unlawful seizures, detentions, searches, use of excessive force and interrogations, and photographing allegedly performed by agents of an intergovernmental law enforcement agency and a city police department during a raid at a bar primarily frequented by homosexual and bisexual men met the commonality requirement for class certification, because the overriding common legal issue of whether law enforcement agents violated the constitutional rights of class members by detaining, searching, interrogating, and photographing them, and by seizing materials from and about them, without arrest or search warrants, probable cause, or any other legal justification was raised by the consolidated complaint); *Walters v. Thompson*, 615 F. Supp. 330, 333-34 (N.D. Ill. 1985) (in a class action by prison inmates claiming that prison policies in regard to inmates in segregation deprived them of meaningful access to courts, the inmates were entitled to class certification of all persons who were presently or would be in

segregation in state maximum security facilities; the class of inmates was large, legal questions concerning direct access to a law library or adequate alternatives were common to the class, the legal theory put forward by the inmates was common to all members of the class, and the inmates would be in segregation during the entire lawsuit and could effectively represent the class); *Faheem-El v. Klincar*, 600 F. Supp. 1029, 1036-37 (N.D. Ill. 1984) (a proposed class of persons subject to Illinois parole revocation proceedings met the requirement of Rule 23(a)(2); common questions of fact existed concerning procedures actually followed by the state, at least in defined geographical areas, and common questions of law existed concerning the constitutionality of the state's handling of those accused of violating their parole); *Johnson v. Brelje*, 482 F. Supp. 121, 123-24 (N.D. Ill. 1979) (common questions of law and fact existed with respect to a class action challenging the legality of the transfer to a mental health center of individuals found not fit to stand trial, in view of allegations that the class members were victims of various discriminatory and otherwise illegal policies, were transferred without notice and hearing, were assigned to the high security facility as a result of improper classifications based on sex and charges of criminality, as well as alleged constitutional violations stemming from the conditions of confinement, the denial of temporary off-ground passes, and the failure to hold annual evaluations). *Cf. Christy v. Hammel*, 87 F.R.D. 381, 391-92 (M.D. Pa. 1980) (the question, in a civil rights action, whether the court should mandate disciplinary hearings before transfers of mental health patients to a maximum security ward was a common contention and satisfied the requirement that there be major questions of law or fact common to the class); *United States v. Mancusi*, 338 F. Supp. 311, 316 (W.D.N.Y. 1971) (the court found that there was a common question whether the plaintiffs, who were inmates at a state prison, were being denied due process by the failure of prison officials to hold proceedings before placing them in a more

restrictive security section of the prison).

### 3. Typicality

Rule 23(a) requires a court to determine whether the "claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). "The test of typicality is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Beale v. EdgeMark Fin. Corp.*, 164 F.R.D. 649, 654 (N.D. Ill. 1995) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). The purpose of the typicality requirement is to ensure that the interests of the class representatives are aligned with the interests of the class as a whole. *See Insolia v. Philip Morris Inc.*, 186 F.R.D. 535, 544 (W.D. Wis. 1998); *Spencer v. Central States, S.E. & S.W. Areas Pension Fund*, 778 F. Supp. 985, 989 (N.D. Ill. 1991).

"Typical does not mean identical, and the typicality requirement is liberally construed." *Gaspar*, 167 F.R.D. at 57. Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory. *See De La Fuente*, 713 F.2d at 232; *Riordan*, 113 F.R.D. at 63; *Edmondson v. Simon*, 86 F.R.D. 375, 381 (N.D. Ill. 1980). The requirement of typicality focuses on the conduct of a defendant and whether a proposed class representative has been injured by the same kind of conduct alleged against the defendant as other members of the

proposed class. *See Clay v. American Tobacco Co.*, 188 F.R.D. 483, 491 (S.D. Ill. 1999) ("The Court should concentrate on the defendants' alleged conduct and the plaintiffs' legal theory to satisfy Rule 23(a)(3)."). This is why a finding that commonality exists generally results in a finding that typicality also exists. *See Rosario*, 963 F.2d at 1018 (noting that the facts necessary to satisfy the commonality and typicality requirements for class certification are "closely related"); *Arenson*, 164 F.R.D. at 664 ("Because commonality and typicality are closely related, a finding of one often results in a finding of the other."); *Buycks-Roberson v. Citibank Fed. Sav. Bank*, 162 F.R.D. 322, 333 n.13 (N.D. Ill. 1995) ("[A] finding of [commonality] generally compels a finding of [typicality].").

In this case the named Plaintiffs' claims are typical of those of the putative class members because the same set of policies and practices are allegedly applied to both the named Plaintiffs and the proposed class members in the same way and have all resulted in the same alleged deprivation of constitutional rights. In other words, both the named Plaintiffs and the class they seek to represent were subjected to the "same event or practice or course of conduct" by Defendants. *De La Fuente*, 713 F.2d at 232. "Thus, the named plaintiff[s'] interests are aligned with the proposed class, and . . . in pursuing their own claims . . . the named plaintiffs will also advance the interest of the class." *Guillory*, 2001 WL 290603, at *4 (citing *In re American Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996)). The Court concludes that the requirement of typicality is met.

### 4. Adequacy

The final Rule 23(a) requirement for class certification is that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). In order to satisfy the requirements of Rule 23(a)(4), the class representative must "possess the same interest and suffer

the same injury as the class members." *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d

978, 985 (7th Cir. 2002) (quoting *East Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403

(1977)).[2]   Thus, in evaluating adequacy, a court is required to make sure that there are no

inconsistencies between the interests of the named party and the class that he or she seeks to

represent. *See id*. (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)).   In general,

absent some showing to the contrary, adequacy of representation will be presumed. *See Guarantee*

*Ins. Agency Co. v. Mid-Continental Realty Corp.*, 57 F.R.D. 555, 565-66 (N.D. Ill. 1972) ("Absent

any conflict between the interests of the representative and [other class members], and absent any

indication that the representative will not aggressively conduct the litigation, fair and adequate

protection of the class may be assumed.").   In this case Defendants do not contend that Plaintiffs are

inadequate class representatives.   Moreover, the Court discerns nothing in the record to suggest that

Plaintiffs Westefer, Von Perbandt, Villazana, Tinajero, Sparling, Sorrentino, Santiago, Ross,

Rodriguez, Rodriguez, Reyna, Muller, Lasley, Knox, Johnson, Horton, Harper, Hall, Gill, Gambrell,

Foutch, Felton, Combs, Coleman, Clayton, Clark, Chapman, Burrell, Bryant, Brown, and Bivens are

not members of the class with the same interest as any other class member in seeking relief for the

---

2.      The requirement of adequacy under Rule 23(a)(4) frequently is set out as a two-part
inquiry:  (1) whether the named plaintiff's representation in protecting the distinct interests of class
members is adequate and (2) whether the named plaintiff's counsel is adequate.  *See, e.g.,*
*Rodriguez v. Ford Motor Credit Co.*, No. 01 C 8526, 2002 WL 655679, at *3 (N.D. Ill. Apr. 19,
2002) (citing *Retired Chicago Police Ass'n*, 7 F.3d at 598).  However, in view of amendments to
Rule 23 in 2003, it is clear that the inquiry into the adequacy of counsel is governed not by
Rule 23(a)(4) but by Rule 23(g).  The commentary to Rule 23 explains that, in light of the 2003
amendments, "Rule 23(a)(4) will continue to call for scrutiny of the proposed class representative,
while [Rule 23(g)] will guide the court in assessing proposed class counsel as part of the certification
decision." FED. R. CIV. P. 23 advisory committee's note.  *See also Jones v. Ford Motor Credit Co.*,
No. 00Civ.8330RJHKNF, 2005 WL 743213, at *18 (S.D.N.Y. Mar. 31, 2005).  Thus, because
Rule 23(a)(4) no longer governs the selection of class counsel, the Court will address the adequacy
of the proposed class counsel in this case in a later section of this Order.

constitutional injuries alleged in the complaint.

The proposed class counsel in this case has advised the Court that Plaintiff Corey Taylor desires for his claims to be severed from those of the class so that he can proceed on his claims by way of a separate action. In light of the fact that Plaintiff Taylor does not wish to serve as a class representative in this case, he is not an adequate class representative. *See Nagel v. ADM Investor Servs., Inc.*, 217 F.3d 436, 442-43 (7th Cir. 2000); *Harriston*, 992 F.2d at 704; *Minority Police Officers Ass'n of South Bend v. South Bend, Ind.*, 555 F. Supp. 921, 925 (N.D. Ind. 1983); *In re Folding Carton Antitrust Litig.*, 88 F.R.D. 211, 213-14 (N.D. Ill. 1980). *Cf. Vanguard Justice Soc'y, Inc. v. Hughes*, 471 F. Supp. 670, 676 (D. Md. 1979); *Herbst v. Able*, 45 F.R.D. 451, 453-54 (S.D.N.Y. 1968). Thus, apart from Plaintiff Taylor, the Court concludes that the requirement of adequacy is met in this case.

### C.      Rule 23(b) Requirements

Because the Court finds that the requirements of Rule 23(a) are satisfied, it next examines whether a class action can be maintained under one of Rule 23(b)'s three subsections. Plaintiffs seek class certification under Rule 23(b)(1) and (b)(2). Rule 23(b) authorizes certification of a class action if the prerequisites of subdivision (a) are satisfied, and in addition,

> (1) the prosecution of separate actions by or against individual members of the class would create a risk of
> (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct of the party opposing the class, or
> (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

FED. R. CIV. P. 23(b)(1), (b)(2).

"[E]ach class member in actions for money damages is entitled as a matter of due process to personal notice and an opportunity to opt out of the class action. Accordingly, Rule 23(c)(2) guarantees those rights for each member of a class certified under Rule 23(b)(3)." *Lemon v. International Union of Operating Eng'rs, Local No. 139, AFL-CIO*, 216 F.3d 577, 580 (7th Cir. 2000) (citation omitted). "However, the Federal Rules of Civil Procedure do not provide comparable procedural guarantees of those rights for a class certified under subsections (b)(1) or (b)(2), and as a result, Rule 23(b)(2) certification does not ensure personal notice or opportunity to opt out even if some or all the plaintiffs pray for monetary damages." *Id. See also Jefferson v. Ingersoll Int'l, Inc.*, 195 F.3d 894, 896 (7th Cir. 1999) ("If the action proceeds under Rule 23(b)(3), then each member of the class must receive notice and an opportunity to opt out and litigate (or not) on his own behalf . . . . If it proceeds under Rule 23(b)(2), by contrast, then no notice will be given, and no one will be allowed to opt out."). *Cf. In re WorldCom, Inc. ERISA Litig.*, No. 02 Civ. 4816(DLC), 2004 WL 2338151, at *8 (S.D.N.Y. Oct. 18, 2004) ("There is no opportunity under any Rule 23(b)(1)(B) class action to opt out[.]").

In *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir. 1998), which has been adopted in this Circuit, *see Lemon*, 216 F.3d at 580; *Jefferson*, 195 F.3d at 898, the court explained the rationale for denying notice and an opportunity to opt out in Rule 23(b)(1) and (b)(2) class actions. In class actions where the relief sought is chiefly monetary, resolution of the class claims depends "on the intangible, subjective differences of each class member's circumstances," and "entail[s] complex individualized determinations." *Allison*, 151 F.3d at 415. Put another way, "a class seeking substantial monetary remedies will more likely consist of members with divergent interests,"

requiring class members to be afforded an opportunity to protect those interests through the devices of notice and opt-out. *Id.* at 413. By contrast, in Rule 23(b)(1) and (b)(2) classes, there is a "presumption[ ] with respect to the cohesiveness and homogeneity of interests among members of" the class, rendering the procedural safeguards applicable to Rule 23(b)(3) classes unnecessary. *Id.* at 412. Constitutional guarantees for absent members of a mandatory class are preserved through fulfillment of the adequacy of representation requirement of Rule 23(a) and the homogeneity requirements of Rule 23(b)(1) and (b)(2) associated with the necessary unitary adjudication of all claims. *See id.* at 412-15. *See also In re Joint E. & S. Dist. Asbestos Litig.*, 78 F.3d 764, 777-78 (2[d] Cir. 1996) (denial of a motion to opt out of a class settlement in bankruptcy court asbestos litigation, which was filed by claimants who had already brought or intended to bring claims for asbestos-related injuries in the District of Columbia, was not an abuse of discretion, when the claimants did not suggest that the class representatives or their counsel lacked the requisite qualifications to represent them or had any antagonistic interests; the claimants had received fair and adequate representation of their rights, and the delicate balancing of interests reached in the settlement agreement would be upset if claimants were now allowed to opt out). With these principles in mind, the Court turns to the issue of whether class certification is appropriate under Rule 23(b)(1) and (b)(2).

### 1.      Rule 23(b)(1) Requirements

The Court concludes that class certification is appropriate in this case pursuant to Rule 23(b)(1). There clearly is a likelihood of separate suits subjecting IDOC to potentially incompatible standards of conduct. At least one case asserting a procedural due process claim arising from assignment to Tamms has been transferred to the docket of the undersigned

District Judge from another division of the Court, and Plaintiff Taylor has indicated a desire to bring a separate action on his claims. Competing lawsuits concerning the subject matter of the class claims in this case have the potential to disrupt severely the orderly operations of IDOC and the Illinois prison system. *See Berry v. Baca*, 226 F.R.D. 398, 405-06 (C.D. Cal. 2005) (named plaintiffs who brought suit alleging that a sheriff's continued detention of detainees in a county jail after court release orders amounted to deliberate indifference to their constitutional rights satisfied Rule 23(b)(1)(A); the sheriff would likely be subject to numerous separate actions absent certification and it was possible that those actions could lead to different and conflicting judgments, a result that would make it difficult for the sheriff to fashion a consistent release policy, should he have to, that would limit the county's exposure to claims); *Death Row Prisoners of Pa. v. Ridge*, 169 F.R.D. 618, 623 (E.D. Pa. 1996) (plaintiffs seeking to certify a class consisting of all present and future state death-row inmates who had not yet filed petitions for habeas corpus review to challenge the state's status under the Antiterrorism and Effective Death Penalty Act showed that prosecution of separate actions could create a risk of inconsistent or varying adjudications establishing incompatible standards of conduct for the state by showing that inconsistent adjudications could result each time the state asserted the relevant statute of limitations for appointment of habeas counsel); *Franklin v. Barry*, 909 F. Supp. 21, 31 (D.D.C. 1995) (class certification was warranted in an action alleging discrimination against Hispanic inmates in District of Columbia correctional institutions; separate actions against the correctional institutions would create a risk of inconsistent adjudications, if the plaintiffs were successful, the relief sought involved equitable relief as to the treatment of Hispanic prisoners in general, final injunctive relief would be dispositive of the claims of each class member, and common questions of law and fact predominated in the case).

*Cf. Cullen v. New York State Civil Serv. Comm'n*, 435 F. Supp. 546, 562 (E.D.N.Y. 1977) (a civil rights action against governmental officials and political leaders on claims of coerced political contributions for job appointment or promotion within a county government was entitled to class certification since multiple litigation would create a very real risk that the defendants would be held to incompatible standards of conduct).

Also, it is probable that a judgment as to any class member's claim for injunctive relief would be dispositive of the claims of the class as a whole. *See Hilton v. Wright*, 235 F.R.D. 40, 53 (N.D.N.Y. 2006) (granting Rule 23(b)(1)(B) class certification as to claims for injunctive and declaratory relief asserted by state inmates in challenging a former policy in which the New York State Department of Correctional Services ("DOCS") and its chief medical officer had required that inmates with Hepatitis C complete a DOCS-sponsored substance abuse program to be eligible to receive a standard combination treatment, where individual resolution of such claims could affect the interests of absent class members, and the relief granted would apply equally to the inmates bringing the action and prospective class members); *Ingles v. City of New York*, No. 01 Civ. 8279(DC), 2003 WL 402565, at **7-8 (S.D.N.Y. Feb. 20, 2003) (certification of a plaintiff class, in a suit by prisoners seeking an injunction against the use of excessive force in New York City Department of Correction institutions, was warranted; prosecution of separate actions risked inconsistent judgments, and the injunctive relief being sought would benefit the entire class); *Caroline C. v. Johnson*, 174 F.R.D. 452, 467 (D. Neb. 1996) (granting Rule 23(b)(1)(B) certification of a class of women patients in an action against officials and psychiatrists at a state-supported mental health institution alleging failure to protect the plaintiffs from assaults by male patients: "An adjudication on the merits of the claims of the named plaintiffs in this case would, as a practical

matter, be dispositive of the interests of the other members of the class.  Any change in the policy

or practices of the defendants at [the hospital] would affect absent members of the class, because

they are or will be subject to those policies or practices.").  Therefore, the Court will grant class

certification pursuant to Rule 23(b)(1) in this case.

### 2.        Rule 23(b)(2) Requirements

The Court concludes that class certification is appropriate in this case pursuant to

Rule 23(b)(2).  As discussed, Rule 23(b)(2) provides that a class can be certified if "the party

opposing the class has acted or refused to act on grounds generally applicable to the class, thereby

making appropriate final injunctive relief or corresponding declaratory relief with respect to the

class as a whole." FED. R. CIV. P. 23(b)(2).  The commentary to Rule 23 describes the intended role

of Rule 23(b)(2) class actions as being to furnish "final relief of an injunctive nature or of a

corresponding declaratory nature, settling the legality of the [defendant's] behavior with respect to

the class as a whole[.]" FED. R. CIV. P. 23 advisory committee's note.  *See also Jefferson*, 195 F.3d

at 897-98.  Class certification under Rule 23(b)(2) is not proper in "cases in which the appropriate

final relief relates exclusively or predominantly to money damages." FED. R. CIV. P. 23 advisory

committee's note.

In this case Plaintiffs seek no monetary relief, only declaratory and injunctive relief as to

their procedural due process claims.[3]  Also, this is of course a civil rights action to enjoin allegedly

unconstitutional practices.  Providing a vehicle for redressing civil rights violations on a classwide

---

3.   The Court questions whether damages are recoverable on the due process claims alleged in this
case in light of the doctrine of qualified immunity, *see Harlow v. Fitzgerald*, 457 U.S. 800, 818
(1982); *Lagerstrom v. Kingston*, No. 05-C-718-C, 2005 WL 3555416, at **3-4 (W.D. Wis.
Dec. 27, 2005), although of course it is not necessary to decide this issue in order to resolve
Plaintiffs' request for class certification.

basis through injunctive or declaratory relief is the fundamental purpose of Rule 23(b)(2). *See* Fed. R. Civ. P. 23 advisory committee's note; *Fujishima v. Board of Educ.*, 460 F.2d 1355, 1360 (7th Cir. 1972). *Cf. Penson v. Terminal Transp. Co.*, 634 F.2d 989, 993 (5th Cir. 1981); *Inmates of Lycoming County Prison v. Strode*, 79 F.R.D. 228, 234 (M.D. Pa. 1978). Correspondingly, Rule 23(b)(2) is routinely employed as a tool to vindicate the civil rights of prison inmates. *See, e.g., Lewis v. Washington*, 197 F.R.D. 611, 612-13 (N.D. Ill. 2000) (a suit by inmates challenging their placement in protective custody status was maintainable as a class action under Rule 23(b)(2); injunctive or declaratory relief was the predominant form of relief sought, and the defendants acted on grounds common to the class by putting them in a particular custody status and subjecting them to the treatment alleged); *Walters*, 615 F. Supp. at 335 (granting Rule 23(b)(2) class certification in a suit by prison inmates in segregation units in Illinois prisons against state corrections officials, alleging the inmates were denied meaningful access to courts); *Williams v. Lane*, 96 F.R.D. 383, 386-87 (N.D. Ill. 1982) (a suit by prisoners challenging conditions of confinement in the protective custody unit of a correctional center met the requirements of Rule 23(b)(2) that the defendants acted or refused to act on grounds generally applicable to the class, making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole, and the same was true though the plaintiffs also sought some monetary relief); *Lewis v. Tully*, 96 F.R.D. 370, 378 (N.D. Ill. 1982) (granting Rule 23(b)(2) class certification in a suit challenging the constitutionality of post-discharge detention procedures as to persons held in custody in the Cook County Department of Corrections); *Hendrix v. Faulkner*, 525 F. Supp. 435, 444 (N.D. Ind. 1981) (an action by prisoners challenging significant delays in medical treatment, the overall minimal level of health care, and overcrowding at a prison as violative of the Eighth Amendment was maintainable

as a Rule 23(b)(2) class action), *rev'd on other grounds sub nom. Wellman v. Faulkner*, 715 F.2d 269 (7th Cir. 1983); *Robert E. v. Lane*, 530 F. Supp. 930, 944 (N.D. Ill. 1981) (an action by inmates against prison administrators alleging constitutionally deficient mental health treatment could be certified as a class action under Rule 23(b)(2)); *Green v. Cady*, 90 F.R.D. 622, 624 (E.D. Wis. 1981) (in a suit challenging conditions of confinement in a penal institution's adjustment center, certifying pursuant to Rule 23(b)(2) a class of "persons who are or will be confined in the Waupun Correctional Institution and thus are subject to confinement in WCI's Adjustment Center."); *Wetmore v. Fields*, 458 F. Supp. 1131, 1133-34 (W.D. Wis. 1978) (granting Rule 23(b)(2) class certification as to a request by prison inmates for injunctive relief requiring prison officials to follow the nondiscretionary duties of providing and maintaining an adequate law library or inmate legal-assistance program and seeking a declaration that the University of Wisconsin Legal Assistance to Inmates program denied the inmates meaningful access to the courts). *Cf. Thomas v. Baca*, 231 F.R.D. 397, 403 (C.D. Cal. 2005) (an action under 42 U.S.C. § 1983 by county jail detainees alleging that a sheriff's department had required them to sleep on cell floors while detained, was maintainable as a class action on the basis that the department had acted on grounds generally applicable to the class; the department was alleged to have a floor-sleeping policy that was generally applicable to all detainees, and the class comprised present and future detainees as well as former ones, so that injunctive relief was appropriate); *Bradley v. Harrelson*, 151 F.R.D. 422, 427 (M.D. Ala. 1993) (class certification under Rule 23(b)(2) was appropriate in an action challenging deficiencies in the system for delivering mental health care to seriously mentally ill inmates in the Alabama prison system); *Carver v. Knox County, Tenn.*, 753 F. Supp. 1370, 1374 (E.D. Tenn. 1989) (an action by inmates and pretrial detainees claiming that various conditions at a county jail violated

the Eighth and Fourteenth Amendments was certified as a Rule 23(b)(2) class action), *rev'd in part on other grounds*, 887 F.2d 1287 (6th Cir. 1989); *Robbins v. Kleindienst*, 383 F. Supp. 239, 240-41 (D.D.C. 1974) (a claim alleging that any transfer of a federal prisoner to a more secure penal institution, for whatever reason, is violative of due process under the Fifth and Sixth Amendments when accomplished without adequate written standards to control those transfers and when accomplished without a notice, a hearing, and other procedural safeguards was maintainable as a class action under Rule 23(b)(2)). The Court will grant class certification pursuant to Rule 23(b)(2).

### D.    Defendants' Objections to Class Certification

Because the Court is mindful of the considerations of federalism and comity that obtain when a federal court is asked to grant injunctive relief against state prison officials, *see Carr v. Whittenburg*, No. 3:01-cv-625-DGW, 2006 WL 1207286, at *3 (S.D. Ill. Apr. 28, 2006), the Court has given careful attention to Defendants' objections to class certification. However, the Court finds that Defendants' objections fail to make a convincing case against certifying for classwide resolution Plaintiffs' request for declaratory and injunctive relief as to their procedural due process claims. For example, Defendants argue that Plaintiffs and other inmates at Tamms have received all of the process they are due and that Plaintiffs seek injunctive relief the Court does not have the power to grant. These contentions obviously concern the merits of Plaintiffs' claims, a matter that, as discussed, is not before the Court at this time. *See Retired Chicago Police Ass'n*, 7 F.3d at 598; *Feldman v. Motorola, Inc.*, No. 90 C 5887, 1994 WL 160117, at *1 (N.D. Ill. Jan. 31, 1994); *Hardin v. Harshbarger*, 814 F. Supp. 703, 706 (N.D. Ill. 1993); *In re VMS Sec. Litig.*, 136 F.R.D. at 473.

Defendants also argue somewhat cryptically that classwide relief cannot be granted because Plaintiffs and other Tamms inmates may or may not possess a due process liberty interest in avoiding assignment to the prison in the future.  The existence of a liberty interest in this case depends of course on the conditions of confinement and whether those conditions constitute an atypical and significant hardship in relation to the ordinary incidents of prison life.  *See Wilkinson*, 125 S. Ct. at 2393-95; *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995); *Westefer*, 422 F.3d at 589-90. If Defendants are suggesting that conditions at Tamms may become less restrictive in the future, the Court finds this unlikely – as Plaintiffs allege, Tamms is designed to be highly punitive, in order to discourage inmates at other IDOC prisons from committing acts likely to cause them to be sent there, *see Westefer*, 422 F.3d at 589 – and, in any event, it is well settled that a voluntary cessation of complained-of conduct generally does not moot a lawsuit.  *See City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 288-89 (1982); *United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953); *Edwards v. Illinois Bd. of Admissions to Bar*, 261 F.3d 723, 728 (7th Cir. 2001); *Kikumura v. Turner*, 28 F.3d 592, 597 (7th Cir. 1994); *Rabinowitz v. Board of Junior Coll. Dist. 508, State of Ill.*, 507 F.2d 1255, 1256 (7th Cir. 1974).

Finally, to the extent Defendants object to the inclusion in the proposed class of persons in IDOC custody who have been, but no longer are, confined at Tamms, the Court disagrees. Although, as discussed, several Plaintiffs in this case have been transferred from Tamms since the case began, it has not been shown that they are no longer in IDOC custody and thus no longer are in danger of assignment to Tamms.  The Court agrees that it would be improper to include persons who are no longer in IDOC custody in the class, but the Court sees no impropriety in including in the class former Tamms inmates who remain in IDOC custody.  *See Ahrens v. Thomas*, 570 F.2d

286, 288 (8ᵗʰ Cir. 1978) (affirming the certification of a class of "all present and future pretrial detainees at the Platte County Jail"); *Coleman v. Wilson*, 912 F. Supp. 1282, 1293 (E.D. Cal. 1995) (certifying a class of "all inmates with serious mental disorders who are now or who will in the future be confined within the California Department of Corrections[.]"); *Scarpino v. Grosshiem*, 852 F. Supp. 798, 807 (S.D. Iowa 1994) (class certification under Rule 23(b)(2) was appropriate for a class of inmates who had been enrolled, were currently enrolled, or would in the future be enrolled in an alcoholic rehabilitation program in a suit challenging the constitutionality of the program). *See also Johnson*, 482 F. Supp. at 123 (in a civil rights class action on behalf of prison inmates, stating, "The fact that the classes may include persons who are not identifiable at the present, or that class membership may change by the end of trial, is no impediment to the certification of these classes."). *Cf. Anderson v. Coughlin*, 119 F.R.D. 1, 3 (N.D.N.Y. 1988) (observing that, where class certification is sought under Rule 23(b)(2), "precise definition [of the class] is not as important as it may be under other class certification rules," given that the relief sought is predominantly equitable relief against a defendant's allegedly unlawful conduct directed to the class as a whole).

The Court is quite firmly of the view that it is in the interest of all of the parties to this case, including IDOC and its officers and employees, for the question of whether assignment to Tamms implicates a due process liberty interest and, if so, what process is required to protect that interest to be resolved on a classwide basis in a single proceeding, rather than piecemeal through potentially scores of separate lawsuits that are likely to yield conflicting results and that are certain to consume public resources for their defense. *See Jones v. Smith*, 784 F.2d 149, 151 (2ᵈ Cir. 1986) (recommending to district courts that they consider class certification as to a rising volume of civil

rights lawsuits brought by prison inmates pertaining to a single constitutional issue).[4]  Defendants'
objections to class certification are overruled.

### E.    Adequacy of Counsel

As a final matter, the Court addresses the issue of adequacy of counsel.  Rule 23 of the
Federal Rules of Civil Procedure provides, in pertinent part, "Unless a statute provides otherwise,
a court that certifies a class must appoint class counsel."  FED. R. CIV. P. 23(g)(1)(A).  The rule
provides further that "[a]n attorney appointed to serve as class counsel must fairly and adequately
represent the interests of the class."  FED. R. CIV. P. 23(g)(1)(B).  In evaluating proposed class
counsel, a court must consider:  the work counsel has done in identifying or investigating potential
claims in the action; counsel's experience in handling class actions, other complex litigation, and
claims of the type asserted in the action; counsel's knowledge of the applicable law; and the
resources counsel will commit to representing the class.  *See* FED. R. CIV. P. 23(g)(1)(C)(i).  Also,
the court may consider "any other matter pertinent to counsel's ability to fairly and adequately
represent the interests of the class."  FED. R. CIV. P. 23(g)(1)(C)(ii).  Finally, the court "may direct
potential class counsel to provide information on any subject pertinent to the appointment and to
propose terms for attorney fees and nontaxable costs."  FED. R. CIV. P. 23(g)(1)(C)(iii).

In this instance, Alan S. Mills of the Uptown People's Law Center in Chicago, Illinois, seeks
appointment as class counsel.  Defendants do not dispute the adequacy of Mr. Mills to serve as class

---

4.   For this reason the Court in its discretion will permit no opting-out of the class in this case.  *See
Bradley v. Amsted Indus., Inc.*, No. 01 C 2963, 2004 WL 1745752, at *3 (N.D. Ill. July 30, 2004);
*Tylka v. Gerber Prods. Co.*, 178 F.R.D. 493, 501 n.8 (N.D. Ill. 1998); *Montgomery v. Aetna
Plywood, Inc.*, No. 95 C 3193, 1996 WL 189347, at *5 (N.D. Ill. Apr. 16, 1996); *Williams v. Lane*,
129 F.R.D. 636, 639 n.5 (N.D. Ill. 1990).  *Cf. Smith v. University of Wash. Law Sch.*, 2 F. Supp. 2d
1324, 1345 (W.D. Wash. 1998).

counsel in this matter, and the Court concludes that he is well qualified to represent the class. Mr. Mills has extensive experience representing prisoners in civil rights litigation, including class action litigation. *See, e.g., Walters*, 615 F. Supp. at 332-35. He has litigated this case ably to date, showing that he has the experience and resources to conduct the representation of the class to its conclusion. Although the Court is not familiar with any fee arrangements Mr. Mills has with his clients, the Court assumes that, if the class prevails, Mr. Mills will seek an award of reasonable attorney's fees pursuant to 42 U.S.C. § 1988(b). The Court concludes that Mr. Mills is adequate to serve as class counsel in this case.[5]

### CONCLUSION

Plaintiffs' motion for class certification (Doc. 122) is **GRANTED**. Pursuant to Rule 23(b)(1) and (b)(2) of the Federal Rules of Civil Procedure, the Court hereby certifies as a class action Plaintiffs' request for declaratory and injunctive relief as to Count Two of their operative complaint (Doc. 144). The class is defined as follows:

> All inmates who have been transferred to Tamms Correctional Center since January 1, 1998, and all prisoners who will be transferred to Tamms in the future.

The Court **APPOINTS** Plaintiffs Robert Westefer, Mark Von Perbandt, Alejandro Villazana, Armando Tinajero, Michael Sparling, Joe Sorrentino, Anibal Santiago, Tyshawn Ross, Edward Rodriguez, Vincente Rodriguez, Vincent Reyna, Alex Muller, William Lasley, Ted Knox, Michael Johnson, Eugene Horton, George Harper, Timothy Hall, John Gill, Larry Gambrell, Larry Foutch,

---

5.    The Court notes that, since Plaintiffs filed their motion for class certification, attorneys Lawrence A. Wojcik, Colleen E. McManus, and Paul Homer, all of the firm of DLA Piper Rudnick Gary Cary US, LLP, in Chicago, Illinois, have entered their appearance on behalf of Plaintiffs. If these attorneys wish to be appointed class counsel in this case, they are advised to submit to the Court an appropriate motion and supporting documentation pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

Robert Felton, Kennard Combs, Maurice Coleman, Laverne Clayton, Gary Clark, Mary Chapman, as the administrator of the estate of Marcus Chapman, Roosevelt Burrell, Finner Bryant, Larry Brown, and Aryules Bivens as representatives of the class.  The Court **APPOINTS** Alan S. Mills of the Uptown People's Law Center, Chicago, Illinois, as class counsel.

**IT IS SO ORDERED.**

DATED:  09/12/06

s/ G. Patrick Murphy
G. PATRICK MURPHY
Chief United States District Judge