**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **ROBERT WESTEFER, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL NO. 00-162-GPM** |
| | ) | |
| **DONALD SNYDER, et al.,** | ) | **Consolidated with:** |
| | ) | **CIVIL NO. 00-708-GPM** |
| **Defendants.** | ) | |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

## I. INTRODUCTION

This matter, which currently is before the Court on cross-motions for partial summary

judgment (Docs. 266 and 270), involves consolidated cases alleging civil rights violations under 42

U.S.C. § 1983. The consolidated cases are *Westefer v. Snyder*, Civil No. 00-162-GPM

(S.D. Ill. filed Mar. 7, 2000), and *Cunningham v. Snyder*, Civil No. 00-708-GPM

(S.D. Ill. filed Sept. 11, 2000); Case No. 00-162 is the lead case. Most of the Plaintiffs in the

consolidated cases, specifically, Robert Westefer, Mark Von Perbandt, Alejandro Villazana,

Armando Tinajero, Corey Taylor, Michael Sparling, Joe Sorrentino, Anibal Santiago, Tyshawn Ross,

Edward Rodriguez, Vincente Rodriguez, Vincent Reyna, Alex Muller, William Lasley, Ted Knox,

Michael Johnson, Eugene Horton, George Harper, Timothy Hall, John Gill, Larry Gambrell,

Larry Foutch, Robert Felton, Kennard Combs, Maurice Coleman, Laverne Clayton, Gary Clark,

Roosevelt Burrell, Finner Bryant, Larry Brown, Aryules Bivens, and Bennie Cunningham, are past

and present inmates of the closed maximum security ("supermax") unit at Tamms Correctional

Center ("Tamms") in Tamms, Illinois.[1]  Plaintiff Mary Chapman is the mother of Marcus Chapman, who was originally a named Plaintiff in Case No. 00-162 but who committed suicide while in segregation at Tamms on August 26, 2004; following his death his mother was named administrator of his estate and was substituted as a Plaintiff in his stead in Case No. 00-162 in February 2006.  Named as Defendants in the consolidated cases are Donald Snyder, Odie Washington, Michael V. Neal, George DeTella, Michael O'Leary, Dwayne Clark, Jerry Gilmore, Lamark Carter, Rodney Ahitow, Roger Cowan, Thomas Page, Roger Walker, Salvador Godinez, Guy Pierce, Barbara Hurt, Rick Orr, Ronald Meek, Jason Garnett, Dierdre Battaglia, Eddie Jones, Don Hulick, Roger Zimmerman, Richard McVicar, George C. Welborn, Angela Winsor, Homer Markel, and Jack Hartwig, who are past and present employees of the Illinois Department of Corrections ("IDOC").

Plaintiffs Von Perbandt, Taylor, Sparling, Sorrentino, Santiago, V. Rodriguez, E. Rodriguez, Lasley, Knox, Horton, Harper, Felton, Combs, Clayton, Chapman, Burrell, Bivens, and Cunningham assert claims under 42 U.S.C. § 1983 alleging that they were assigned by Defendants to the supermax prison at Tamms in retaliation for filing grievances and lawsuits and engaging in other protected activities challenging the conditions of their confinement, in violation of the First and Fourteenth Amendments to the Constitution.[2]  Additionally, Plaintiffs Westefer, Von Perbandt, Villazana,

---

1.    The operative complaint in Case No. 00-162 (Doc. 144) reflects that since the commencement of this lawsuit Plaintiffs Westefer, Tinajero, Sparling, Ross, Lasley, Horton, Gambrell, Foutch, Felton, Clayton, Clark, Burrell, Bryant, and Bivens have been transferred out of Tamms.  The Court notes that there is also a minimum security facility at Tamms; all references to Tamms in this Order are to the supermax facility at Tamms.

2.    The original complaint in Case No. 00-162 asserted also a retaliation claim on behalf of Plaintiff Ronnie Carroll.  However, Carroll was terminated as a party to this litigation in February 2006.

Tinajero, Taylor, Sparling, Sorrentino, Santiago, Ross, V. Rodriguez, E. Rodriguez, Reyna, Muller, Lasley, Knox, Johnson, Horton, Harper, Hall, Gill, Gambrell, Foutch, Felton, Combs, Coleman, Clayton, Clark, Chapman, Burrell, Bryant, Brown, Bivens, and Cunningham assert claims under Section 1983 alleging that Defendants assigned them to the Tamms supermax prison without notice and an opportunity to be heard, in violation of Plaintiffs' Fourteenth Amendment right of procedural due process.

The procedural history of this matter relevant to the instant cross-motions for partial summary judgment is as follows. On December 20, 2000, the Court entered an order dismissing, inter alia, the procedural due process claims asserted in Case No. 00-162 for failure to state a claim upon which relief can be granted; on January 23, 2002, the Court modified that order to make the dismissal with prejudice. On July 28, 2003, the Court granted summary judgment in Case No. 00-162 for Defendants Snyder, Washington, Neal, DeTella, O'Leary, Clark, Gilmore, Carter, Ahitow, Cowan, and Page. In that order the Court dismissed with prejudice the retaliation claims of Plaintiffs Von Perbandt, Taylor, Sparling, Sorrentino, E. Rodriguez, Lasley, Knox, Harper, Combs, Clayton, Chapman, Carroll, Burrell, and Bivens on the grounds that those Plaintiffs had failed to show a genuine issue of material fact for trial. Also, the Court dismissed without prejudice the retaliation claims of Plaintiffs Santiago, V. Rodriguez, Horton, and Felton for failure to exhaust administrative remedies as required under 42 U.S.C. § 1997e(a). Judgment was duly entered. The United States Court of Appeals for the Seventh Circuit subsequently reversed this Court's dismissal of the procedural due process claims in Case No. 00-162 for failure to state a claim upon which relief can be granted, as well as the grant of summary judgment on the retaliation claims in the case. *See Westefer v. Snyder*, 422 F.3d 570, 590 (7th Cir. 2005). Additionally, the court found that there was

a question of fact as to whether any administrative procedure exists for grieving an assignment to Tamms and reversed this Court's dismissal of the retaliation claims of Plaintiffs Santiago, V. Rodriguez, Horton, and Felton for failure to exhaust administrative remedies. *See id.* at 579-81. *See also Thomas v. Walker*, Civil No. 05-380-JPG, 2007 WL 2198936, at *3 (S.D. Ill. July 25, 2007). Following remand of Case No. 00-162 to this Court, on September 12, 2006, the Court granted class certification as to the procedural due process claims asserted in Case No. 00-162, defining the class as "All inmates who have been transferred to Tamms Correctional Center since January 1, 1998, and all prisoners who will be transferred to Tamms in the future." *Westefer v. Snyder*, Civil Nos. 00-162-GPM, 00-708-GPM, 2006 WL 2639972, at *12 (S.D. Ill. Sept. 12, 2006). Plaintiffs Westefer, Von Perbandt, Villazana, Tinajero, Sparling, Sorrentino, Santiago, Ross, V. Rodriguez, E. Rodriguez, Reyna, Muller, Lasley, Knox, Johnson, Horton, Harper, Hall, Gill, Gambrell, Foutch, Felton, Combs, Coleman, Clayton, Clark, Chapman, Burrell, Bryant, Brown, and Bivens were appointed representatives of the class; Alan S. Mills of the Uptown People's Law Center in Chicago, Illinois, was appointed counsel for the class. *See id.*[3]

Turning then to the cross-motions for partial summary judgment that have been filed in this matter, at this time Plaintiffs Westefer, Von Perbandt, Villazana, Tinajero, Sparling, Sorrentino,

---

3. The Court notes that Mills currently is being assisted in his representation of Plaintiffs Westefer, Von Perbandt, Villazana, Tinajero, Sparling, Sorrentino, Santiago, Ross, V. Rodriguez, E. Rodriguez, Reyna, Muller, Lasley, Knox, Johnson, Horton, Harper, Hall, Gill, Gambrell, Foutch, Felton, Combs, Coleman, Clayton, Clark, Chapman, Burrell, Bryant, Brown, Bivens, and the class by attorneys from the firm of DLA Piper US, LLP ("DLA Piper"), in Chicago, although DLA Piper has not moved to be appointed class counsel. The Court notes also that Plaintiff Taylor, although originally represented by Mills, has been proceeding pro se on his retaliation claim since December 2006. *See Westefer v. Snyder*, Civil Nos. 00-162-GPM, 00-708-GPM, 2006 WL 5240411 (S.D. Ill. Dec. 20, 2006). *See also Westefer v. Snyder*, No. 00-162-GPM, 2008 WL 131166 (S.D. Ill. Jan. 9, 2008).

Santiago, Ross, V. Rodriguez, E. Rodriguez, Reyna, Muller, Lasley, Knox, Johnson, Horton, Harper, Hall, Gill, Gambrell, Foutch, Felton, Combs, Coleman, Clayton, Clark, Chapman, Burrell, Bryant, Brown, and Bivens seek summary judgment for themselves and the class that they have a due process liberty interest in avoiding assignment to Tamms that has been violated by Defendants; the movants reserve for trial the question of precisely what constitutional process is due inmates before they may be assigned to Tamms. In turn, Defendants Snyder, Washington, Neal, DeTella, O'Leary, Clark, Gilmore, Ahitow, Cowan, and Page seek partial summary judgment that: they are shielded by the doctrine of qualified immunity from liability for damages on the procedural due process claims of Plaintiffs Westefer, Von Perbandt, Villazana, Tinajero, Taylor, Sparling, Sorrentino, Santiago, Ross, V. Rodriguez, E. Rodriguez, Reyna, Muller, Lasley, Knox, Johnson, Horton, Harper, Hall, Gill, Gambrell, Foutch, Felton, Combs, Coleman, Clayton, Clark, Chapman, Burrell, Bryant, Brown, and Bivens; Plaintiff Santiago's retaliation claim is barred by claim preclusion or issue preclusion; the qualified immunity doctrine bars the retaliation claims of Plaintiffs V. Rodriguez and Harper; and the doctrine of personal involvement precludes liability for Defendant Snyder on the retaliation claims of Plaintiffs Von Perbandt, Taylor, Sparling, Sorrentino, E. Rodriguez, Lasley, Knox, Horton, Felton, Combs, Clayton, Chapman, Burrell, Bivens, and Cunningham. The Court will address first Plaintiffs' motion for partial summary judgment, then Defendants' motion for partial summary judgment.

## II. ANALYSIS

Rule 56 of the Federal Rules of Civil Procedure provides, in pertinent part, that "[a] party claiming relief may move, with or without supporting affidavits, for summary judgment on all or part of the claim . . . . at any time after . . . 20 days have passed from commencement of the

action[.]"  Fed. R. Civ. P. 56(a)(1).  The rule provides also that "[a] party against whom relief is sought may move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim."  Fed. R. Civ. P. 56(b).  Summary judgment may be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In considering a summary judgment motion, a court must review the entire record and draw all reasonable inferences in the light most favorable to the non-moving party.  *See NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Enquip, Inc. v. Smith-McDonald Corp.*, 655 F.2d 115, 118 (7th Cir. 1981).  On summary judgment a court may not make credibility determinations or weigh the evidence, because these are tasks for a factfinder.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Betaco, Inc. v. Cessna Aircraft Co.*, 32 F.3d 1126, 1138 (7th Cir. 1994).  In evaluating a motion for summary judgment, "[t]he court has one task and one task only:  to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial."  *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).  "Importantly, the mere fact that all parties to an action have moved for summary judgment does not, in itself, show the absence of any genuine issue for trial.  'Counter-motions for summary judgment do not automatically empower the court to dispense with the determination of whether questions of material fact exist.'"  *Boeckman v. A.G. Edwards, Inc.*, Civil No. 05-658-GPM, 2007 WL 4225740, at *1 (S.D. Ill. Aug. 31, 2007) (quoting *Krawczyk v. Harnischfeger Corp.*, 869 F. Supp. 613, 621 (E.D. Wis. 1994)).  "Merely because both parties move for summary judgment does not mean that one party must prevail.  If neither party demonstrates that summary judgment in its favor is warranted, neither motion will be granted."  *Id*.

### A.  Plaintiffs' Motion for Partial Summary Judgment

As noted, the Court is asked to give summary judgment for Plaintiffs Westefer, Von Perbandt, Villazana, Tinajero, Sparling, Sorrentino, Santiago, Ross, V. Rodriguez, E. Rodriguez, Reyna, Muller, Lasley, Knox, Johnson, Horton, Harper, Hall, Gill, Gambrell, Foutch, Felton, Combs, Coleman, Clayton, Clark, Chapman, Burrell, Bryant, Brown, Bivens, and the class on the questions of whether they possess a due process liberty interest in avoiding assignment to the supermax facility at Tamms and whether they have been deprived of that interest without due process, as the movants must show in order to prevail on the classwide due process claims.  *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (prisoners, to prevail on procedural due process claims, must show that they possess a liberty interest and have been deprived of that interest without due process).  In the prison context, and more specifically in the context of assignments to segregated confinement, liberty interests "will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  In order to determine whether conditions of confinement impose "an atypical and significant hardship within the correctional context," those conditions must be measured against a baseline.  *Wilkinson v. Austin*, 545 U.S. 209, 223-24 (2005).  In *Wilkinson* the Court, noting that the federal courts of appeals had not reached agreement on the appropriate baseline, held that conditions of confinement at the Ohio State Penitentiary ("OSP"), which, like Tamms, is a supermax prison, imposed atypical and significant hardship on inmates there "under any plausible baseline."  *Id.* at 223.

In *Wagner v. Hanks*, 128 F.3d 1173 (7th Cir. 1997), the court held that the correct baseline for determining whether conditions of confinement in a state prison impose atypical and significant

hardship on inmates such as to give rise to a liberty interest is the conditions of non-disciplinary segregation in the state's most restrictive prison. *See id*. at 1175. The *Wagner* court reasoned that it would be arbitrary to compare conditions in disciplinary segregation with conditions in non-disciplinary segregation in less restrictive prisons because under *Sandin* whether conditions of confinement impose atypical and significant hardship must be tested in relation to the ordinary incidents of prison life and such incidents must be measured in relation to the harshest conditions of non-disciplinary segregation in a state prison system. *See id*. In this instance the baseline established in *Wagner* is difficult to apply because, the parties agree, Tamms is the most restrictive prison in the IDOC system and conditions of confinement there are approximately the same for inmates assigned to the supermax prison in both disciplinary segregation and non-disciplinary segregation. When the Court attempted to apply the *Wagner* baseline earlier in Case No. 00-162, the Seventh Circuit Court of Appeals reversed the Court, as already has been discussed, holding that *Wilkinson* compelled the use of a different baseline standard. *See Westefer*, 422 F.3d at 585-86. The *Westefer* court invited this Court, following remand of Case No. 00-162 from the reviewing court, to apply either the *Wilkinson* "any plausible baseline" standard or a different baseline of the Court's choosing. *See id*. at 589-90.

Having considered the matter carefully, the Court concludes that *Wilkinson* furnishes the correct baseline in this matter. In *Wilkinson* the Court examined the aggregate of conditions at the OSP in evaluating whether they imposed atypical and significant hardship on inmates such as to give rise to a liberty interest. The Court noted the OSP's "especially severe limitations on all human contact," and went on to discuss "two added components." *Wilkinson*, 545 U.S. at 224. These were the indefinite duration of an inmate's placement at the prison, and the disqualification of an

otherwise eligible inmate for parole consideration. *See id.* The Court observed, "While any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context. It follows that respondents have a liberty interest in avoiding assignment to OSP." *Id.* (citing *Sandin*, 515 U.S. at 483). Counsel for Plaintiffs Westefer, Von Perbandt, Villazana, Tinajero, Sparling, Sorrentino, Santiago, Ross, V. Rodriguez, E. Rodriguez, Reyna, Muller, Lasley, Knox, Johnson, Horton, Harper, Hall, Gill, Gambrell, Foutch, Felton, Combs, Coleman, Clayton, Clark, Chapman, Burrell, Bryant, Brown, Bivens, and the class agrees that the correct baseline in this case is furnished by the *Wilkinson* standard requiring the Court to evaluate the aggregate of conditions at the Tamms supermax prison in determining whether inmates have a liberty interest in avoiding assignment to the prison.

The Court turns then to the evidence adduced by the Plaintiffs seeking partial summary judgment concerning the aggregate of conditions at the Tamms supermax facility. The moving Plaintiffs assert that: conditions of confinement at Tamms are deliberately designed to be extraordinarily harsh, to encourage inmates at other prisons to comply with all disciplinary rules to avoid assignment to Tamms; assignment to Tamms is for an indefinite time, with the only limit on the time a prisoner can be confined to Tamms being the length of the prisoner's sentence; Tamms is located in a remote rural area hundreds of miles from Chicago, where the families of most Tamms inmates reside, thus limiting the ability of inmates to receive familial visits; Tamms inmates spend between twenty-three and twenty-four hours a day in their cells; only inmates who reach certain behavioral levels in non-disciplinary segregation are permitted to have a television or radio; cell doors at Tamms are constructed of steel mesh with a food slot that is locked from the outside;

inmates cannot see other inmates while in their cells; inmates are required to eat in their cells; inmates are single celled and cannot visit with other inmates; inmates cannot participate in communal religious services or educational and work programs; inmates are shackled and body searched when they leave their cells, except for exercise and showers; inmates in the most restricted categories at Tamms are allowed to leave their cells for only one hour per week to exercise and shower, while inmates in the least restricted categories are permitted only seven hours of yard time and five showers per week; exercise takes place in a concrete yard about fifteen by thirty feet that is completely empty, and inmates may go weeks without leaving their cells to exercise because their privileges have been revoked; all inmate visits are non-contact and take place through a glass wall, with inmates being restrained during visits; communication between inmates and visitors takes place using an intercom system that allows only one person to talk at a time, and conversations may be monitored; absent emergencies, non-attorney visits must be arranged two weeks in advance for a specific time, and if a visitor arrives twenty minutes late for a scheduled visit, the visitor can be denied permission to visit an inmate; inmate telephone calls are prohibited, except for legal calls and emergencies, and inmates may not initiate calls to their attorneys; and inmates are not eligible for awards of meritorious good time.

The moving Plaintiffs assert also that Tamms inmates are not eligible to participate in substance abuse programs, and that Tamms inmates must complete a gang renunciation process as a prerequisite to transfer to a lower security prison. Additionally, they claim, Tamms inmates have less access to law library facilities and legal assistance than inmates at other prisons, cannot talk with physicians and religious representatives outside the presence of correctional officers, and are more restricted in the property they can possess than at other prisons; also, the selection of goods and the

prices at the Tamms commissary are worse than at other prisons. The movants contend that conditions at Tamms are as harsh as those at the OSP and are harsher than at any other prison in Illinois. They also proffer evidence by Dr. Terry Kupers, an expert on the effect of confinement in supermax prisons on the mental health of inmates of such prisons who is familiar with conditions at both Tamms and the OSP, showing that confinement at Tamms amounts to a virtually complete absence of human contact and virtual sensory deprivation for inmates, with severe consequences for the mental health of inmates assigned long-term to Tamms.

In response, Defendants argue that the baseline in this case should be fixed by conditions in the IDOC system, not by conditions at prisons out of state such as the OSP. This point is a cogent one. The *Wilkinson* Court noted that "a liberty interest in avoiding particular conditions of confinement . . . arise[s] from state policies or regulations," meaning in this instance, of course, policies and regulations of Illinois. 545 U.S. at 222. As the *Wilkinson* Court noted also, "the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" *Id*. at 223 (quoting *Sandin*, 515 U.S. at 484). The basic question, in other words, is the sort of "expectation or interest" prisoners in the IDOC system may have in light of the normal conditions of confinement prevailing in that system. *Id*. at 221 (citing *Wolff v. McDonnell*, 418 U.S. 539, 556-58 (1974)). On the other hand, as the court pointed out in *Wagner*, it perhaps is not the case under *Sandin* that conditions of confinement must be tested by standards within a single state, given that state prison inmates frequently are confined in out-of-state prisons pursuant to interstate compacts. *See* 128 F.3d at 1176-77. In fact, several Plaintiffs in the instant matter were assigned

to Tamms from prisons outside Illinois.[4]  Also, it is not actually the case that the Plaintiffs seeking partial summary judgment are trying to use the OSP as the baseline.  Rather, as discussed, the standard is whether Tamms imposes atypical and significant hardship under any plausible baseline, with conditions at the OSP being only one of the aggregate of circumstances relevant to determining whether a liberty interest in avoiding assignment to Tamms exists.  Correspondingly, conditions at Illinois prisons other than Tamms are also a relevant consideration, and it appears from the summary judgment record in this matter that the moving Plaintiffs are prepared to produce evidence regarding conditions of confinement throughout the IDOC system.

In addition to challenging the baseline favored by the Plaintiffs moving for partial summary judgment, Defendants also raise a number of challenges to the facts adduced by the moving Plaintiffs.  For example, Defendants argue that it is not the case that inmates in disciplinary segregation at Tamms are denied the use of a television.  With respect to denials of yard privileges, Defendants point out that inmates throughout the IDOC system, not just Tamms, can be punished through the imposition of multiple, consecutive periods of denial of yard privileges, and that this practice has been held constitutional.  Also, while Defendants concede that Tamms inmates cannot accrue educational good conduct credits due to the lack of educational programs at Tamms, they assert that it is false that Tamms inmates are ineligible for awards of meritorious good conduct credit.  They deny that all inmates at Tamms are single celled and point out that inmates at other Illinois prisons can be denied permission to participate in educational programs and thus be

_____

4.     Specifically, Von Perbandt was housed at prisons in Utah and later Virginia before his assignment to Tamms; Ross was assigned to Tamms from an out-of-state prison; Hall was assigned to Tamms from an out-of-state prison; Brown was assigned to Tamms from an out-of-state prison; and Cunningham was assigned to Tamms from a prison in Rhode Island.

ineligible to receive educational good conduct credits. Defendants point out also that inmates at other Illinois prisons besides Tamms can be denied leave to participate in group religious services and in job programs. Defendants deny that inmates cannot be transferred out of Tamms without completing a gang renunciation process. They challenge as anecdotal the affidavits proffered by the moving Plaintiffs regarding conditions at other prisons in Illinois and outside the state. With respect to whether conditions at Tamms are as harsh or harsher than at the OSP, Defendants point out that it is not claimed in this matter that Tamms inmates cannot conduct conversations between cells and the lights in the prison are kept on twenty-four hours a day, as the *Wilkinson* Court found is the case at the OSP. Defendants point out also that, unlike assignment to the OSP, assignment to Tamms does not affect an inmate's eligibility for parole or mandatory supervised release. Also, Defendants argue, the files of inmates assigned to Tamms in non-disciplinary segregation are reviewed for eligibility for transfer out of the prison more frequently than at the OSP. Defendants assert that the record is not properly developed as to whether conditions at Tamms create a liberty interest in avoiding assignment there and that a complete record needs to be made on the issue.

The Court agrees with Defendants that the due process claims of Plaintiffs and the class demand a trial. In the Seventh Circuit, confinement in disciplinary segregation can trigger due process protections depending on the duration and conditions of the segregation. *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009) (citing *Wilkinson*, 545 U.S. at 224). The Seventh Circuit Court of Appeals also has found a very limited or nonexistent liberty interest in avoiding non-disciplinary segregation of short duration (e.g., six months or less) for administrative, protective, or investigative purposes. *See id.* (citing *Townsend v. Fuchs*, 522 F.3d 765, 776, 771 (7th Cir. 2008)); *Recla v. Federal Bureau of Prisons*, No. 09-cv-101-bbc, 2009 WL 982590, at *4

(W.D. Wis. Apr. 10, 2009). All of the circumstances of a prisoner's segregation, including the actual conditions the prisoner experienced, must be taken into account. *See Marion*, 559 F.3d at 698-99.[5] Here, where the average term of segregated confinement at Tamms experienced by Plaintiffs amounts to years, "fact-finding is necessary" to the resolution of the classwide claims. *Id*. at 699. *Accord Brown v. Plaut*, 131 F.3d 163, 170 (D.C. Cir. 1997) (the inquiry into whether conditions of confinement constitute an atypical and significant hardship giving rise to a protected liberty interest raises "many complex and fact-specific issues"); *Sealey v. Giltner*, 116 F.3d 47, 52 (2d Cir. 1997) ("[W]e have indicated the desirability of fact-finding before determining whether a prisoner has a liberty interest in remaining free from segregated confinement."); *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996) (noting "extensive fact-finding" by the trial court in rejecting a due process challenge to conditions of confinement). The Court "must take into consideration all of the circumstances of a prisoner's confinement in order to ascertain whether a liberty interest is implicated" and this cannot be done on summary judgment. *Marion*, 559 F.3d at 699.

Because the Court finds that there is a genuine issue of material fact as to whether conditions at Tamms create a liberty interest, the Court cannot reach the issue of whether adequate procedures have been employed by the IDOC to protect that interest. However, the Court notes that with respect to the constitutional adequacy of the procedures employed by the IDOC in connection with assignments to Tamms, here too there are genuine issues of material fact. In evaluating the constitutional sufficiency of the procedures employed for assigning prisoners to Tamms the Court

---

5.    In fact, as counsel for the moving Plaintiffs and the class pointed out at the hearing conducted by the Court on the instant cross-motions for partial summary judgment, the *Marion* court hinted that where, as in this matter, the period of segregated confinement at issue exceeds one year, a liberty interest could arise "without any reference to conditions." 559 F.3d at 699.

must consider three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the interest of the IDOC and the State of Illinois, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *See Wilkinson*, 545 U.S. at 224-25 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). The Plaintiffs seeking partial summary judgment argue that under *Wolff v. McDonnell*, *supra*, before transfer to Tamms they are entitled to: (1) written notice of the purported reason for transfer twenty-four hours before a hearing on transfer; (2) an opportunity to present evidence and, where possible, the opportunity to call witnesses; (3) a hearing before a neutral decision-maker; and (4) a written decision setting out the reason for the decision and evidence in support thereof. *See* 418 U.S. at 564. *See also Hanrahan v. Lane*, 747 F.2d 1137, 1140 (7th Cir. 1984).

According to the moving Plaintiffs, under existing IDOC regulations, inmates can be assigned to Tamms for specified reasons, such as gang leadership, serious assault, or escape, but also for any reason, and that an inmate need not have committed any of the proscribed acts to be assigned to Tamms; it is sufficient that the IDOC thinks the inmate may do such an act. They contend that the IDOC has no policy requiring written notice to an inmate twenty-four hours before transfer to Tamms, and that inmates never receive a hearing before transfer to the prison. Further, they claim, IDOC has no policy requiring an inmate, after his arrival at Tamms, to be informed of the reason for his assignment to Tamms and given a written statement concerning the person or persons who made the decision to assign the inmate to Tamms, the evidence relied on in making the decision, and how to challenge the decision. Only inmates assigned to Tamms in non-disciplinary segregation are

entitled to a transfer review hearing ten working days after their arrival at the prison, when possible. Also, an inmate assigned to Tamms in non-disciplinary segregation may not receive a transfer review hearing; if he does, the moving Plaintiffs argue, the hearing affords the inmate no meaningful constitutional process because the inmate is not given advance notice of the hearing and frequently does not even know the reason for his assignment to Tamms, making it very difficult for the inmate to raise a significant challenge to his assignment to Tamms at the hearing. According to the moving Plaintiffs, an inmate frequently receives no written decision following his transfer review hearing and, when he does, it contains no explanation of the decision. Finally, the movants assert, inmates assigned to Tamms in disciplinary segregation receive no hearing at all regarding their assignment to the prison until they have completed their term of segregation.

Defendants, citing *Wilkinson*, argue that inmates challenging assignment to Tamms have a right only to informal, non-adversary procedures, meaning they are entitled only to some notice of the reason for their assignment, an opportunity to be heard, and notice of an adverse decision. *See* 545 U.S. at 229 (citing *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 16 (1979), and *Hewitt v. Helms*, 459 U.S. 460, 473-76 (1983)). They contend that all inmates in disciplinary segregation receive a hearing on the offense resulting in the segregation placement. Further, inmates assigned to Tamms in non-disciplinary segregation receive a transfer hearing ten working days after their transfer, whenever possible; at the hearing inmates can appear, make statements, and present evidence, and can request that persons with relevant information be interviewed. The inmate is informed in writing of the final decision. Defendants deny that they are required to furnish a hearing in advance of an inmate's transfer to Tamms and argue that the existing transfer hearing process adequately protects inmates' rights. Assuming that the evidence at trial

shows that conditions at Tamms constitute an atypical and significant hardship in relation to the ordinary incidents of prison life under any plausible baseline, thus giving rise to a protected interest in avoiding assignment to Tamms, there are numerous factual issues here concerning the process that is available to inmates to challenge assignments to Tamms, as well as the adequacy of that process to protect the inmates' interest in avoiding assignment to Tamms. As the Seventh Circuit Court of Appeals noted in *Westefer*, the record in this matter discloses factual issues concerning: whether inmates are given sufficient notice of the reason for their assignment to Tamms to afford a meaningful opportunity to challenge the assignment; whether for inmates assigned to Tamms in disciplinary segregation, the disciplinary hearing on the offense resulting in the segregation placement is an adequate vehicle by which to challenge assignment to Tamms; whether post-transfer hearings for inmates assigned to Tamms in non-disciplinary segregation afford an adequate vehicle to challenge assignment to Tamms, and whether periodic review of the files of inmates assigned to Tamms in non-disciplinary segregation affords them adequate protection; and whether a process exists to grieve assignment to Tamms, given conflicting positions taken by IDOC on that point, and, if it does exist, its constitutional adequacy. *See* 422 F.3d at 590. The Court will deny partial summary judgment on the questions of whether the moving Plaintiffs and the class possess a due process liberty interest in avoiding assignment to Tamms and whether they have been deprived of that interest without due process.[6]

---

6.  At the hearing the Court conducted on the instant cross-motions for partial summary judgment, counsel for the moving Plaintiffs and the class requested that, in the event their request for partial summary judgment were denied, the Court nevertheless identify the facts that are not genuinely at issue in this matter. *See* Fed. R. Civ. P. 56(d). Unfortunately, in this instance it is quite difficult to ascertain what facts, if any, are genuinely undisputed. Naturally, if there are facts as to which the parties can agree, the Court encourages the parties to stipulate to as many facts as possible in advance of trial in this matter in order to speed the trial process.

## B.     Defendants' Motion for Partial Summary Judgment

### 1.     Qualified Immunity as to Due Process Claims

As noted, Defendants seek summary judgment on the issue of whether they are shielded by the doctrine of qualified immunity from liability in damages as to the procedural due process claims asserted by the named Plaintiffs in Case No. 00-162.[7]  In *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), the Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*. at 818.  *See also Wilson v. Kelkhoff*, 86 F.3d 1438, 1446 (7th Cir. 1996).  Qualified immunity bars an award of damages, but it does not preclude the granting of injunctive relief. *See Behrens v. Pelletier*, 516 U.S. 299, 312 (1996); *Flynn v. Sandahl*, 58 F.3d 283, 289 (7th Cir. 1995) (citing *Knox v. McGinnis*, 998 F.2d 1405, 1412 (7th Cir. 1993)).  "For qualified immunity to be surrendered, preexisting law must dictate, that is, truly compel . . . the conclusion for every like-situated, reasonable government agent that what [he] is doing violates federal law in the circumstances." *Khuans v. School Dist. 110*, 123

---

7.    At the time Plaintiffs in Case No. 00-162 requested class certification on the procedural due process claims asserted in that case, they specifically requested only classwide declaratory and injunctive relief, not monetary relief, so as to ensure certification of the class claims pursuant to Rule 23(b)(1) and (b)(2) of the Federal Rules of Civil Procedure. *See Westefer*, 2006 WL 2639972, at *9.  While it certainly is in the Court's power to award damages incident to a grant of classwide equitable relief, *see Cima v. WellPoint Health Networks, Inc.*, 250 F.R.D. 374, 380-82 (S.D. Ill. 2008); *In re General Motors Corp. Dex-Cool Prods. Liab. Litig.*, 241 F.R.D. 305, 327 n.9 (S.D. Ill. 2007), the Court complied with Plaintiffs' request not to grant class certification as to damage claims.  Accordingly, the only claims for damages as to the procedural due process violations alleged in Case No. 00-162 that are pending before the Court are the individual due process claims of Plaintiffs Westefer, Von Perbandt, Villazana, Tinajero, Taylor, Sparling, Sorrentino, Santiago, Ross, V. Rodriguez, E. Rodriguez, Reyna, Muller, Lasley, Knox, Johnson, Horton, Harper, Hall, Gill, Gambrell, Foutch, Felton, Combs, Coleman, Clayton, Clark, Chapman, Burrell, Bryant, Brown, and Bivens.

F.3d 1010, 1019-20 (7th Cir. 1997) (emphasis omitted). To defeat a qualified immunity defense, a plaintiff bears the burden of demonstrating that "the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions or, . . . the law clearly proscribed the actions the defendant . . . took." *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985). *See also Eversole v. Steele*, 59 F.3d 710, 717 (7th Cir. 1995); *Thomas v. Walton*, 461 F. Supp. 2d 786, 797 (S.D. Ill. 2006). To determine whether clearly established legal norms existed at the pertinent time, a court may refer "to closely analogous case law, decided before the public official acted or failed to act . . . . Of course, in analyzing those cases, precise factual congruity is not required." *Abel v. Miller*, 824 F.2d 1522, 1533 (7th Cir. 1987). *See also Brosseau v. Haugen*, 543 U.S. 194, 197-98 (2004) (testing the existence of a clearly established constitutional right in light of judicial decisions antedating the action challenged in a civil rights lawsuit).

At the time Case No. 00-708 was consolidated with Case No. 00-162, the Court addressed the issue of qualified immunity as to Plaintiff Cunningham's procedural due process claim arising from his assignment to Tamms and concluded that qualified immunity barred damages as to the claim. *See Cunningham v. Snyder*, 472 F. Supp. 2d 1023, 1033 (S.D. Ill. 2006). In its order on qualified immunity in Case No. 00-708 the Court emphasized that it was not deciding the issue for the named Plaintiffs in Case No. 00-162. However, the Court noted that its decision on qualified immunity for Cunningham's due process claim established the law of the case as to the due process claims of the named Plaintiffs in Case No. 00-162. *See id.* at 1033 n.1. The Court observed also that at such time as Defendants in Case No. 00-162 raised the issue of qualified immunity as to the due process claims in that case the Court would expect the named Plaintiffs in Case No. 00-162 to present "compelling grounds" for the Court to reach a different result on qualified immunity than

it had with respect to Cunningham's due process claim. *Id.* The Court has tried to keep an open mind on the question of qualified immunity but believes that its earlier decision as to Cunningham's claim was correct and that the same result must be reached as to the due process claims of the named Plaintiffs in Case No. 00-162.

As the Court found in Case No. 00-708, and continues to believe, at the time Plaintiffs in Case No. 00-162 were assigned to Tamms there was no clearly established constitutional right to due process in connection with assignment to the prison. When Plaintiffs in Case No. 00-162 were assigned to Tamms, the leading Seventh Circuit authority regarding due process in connection with prison assignments was *Wagner v. Hanks*, *supra*, which propounded what this Court termed in its order on qualified immunity in Case No. 00-708 "an extremely stringent interpretation" of the Supreme Court's *Sandin* decision. *Cunningham*, 472 F. Supp. 2d at 1029. In *Wagner* the court held that, after *Sandin*, the right of prison inmates to raise due process challenges to assignments to disciplinary segregation was "vanishingly small" and that, as discussed, the baseline for determining whether conditions of confinement give rise to a liberty interest is measured by conditions in administrative or non-disciplinary segregation in the most restrictive prison in a state. 128 F.3d at 1175. Implicit in the holding of *Wagner* was the view that conditions of confinement in non-disciplinary segregation could never give rise to a liberty interest, as the Seventh Circuit Court of Appeals has acknowledged in recent decisions. *See Townsend*, 522 F.3d at 771-72; *Gillis v. Litscher*, 468 F.3d 488, 492 (7th Cir. 2006); *Holly v. Woolfolk*, 415 F.3d 678, 680-81 (7th Cir. 2005). With respect to assignments to disciplinary segregation, the *Wagner* court held that a liberty interest could arise only if the assignment had the effect of prolonging an inmate's incarceration or if conditions of confinement in disciplinary

segregation rose to the level of a violation of the Eighth Amendment's prohibition of cruel and unusual punishment. *See* 128 F.3d at 1174, 1176. *See also Gillis*, 468 F.3d at 492.

In its order on qualified immunity in Case No. 00-708, the Court demonstrated through an exhaustive survey of decisions from district courts throughout the Seventh Circuit that before the Supreme Court's decision in *Wilkinson* and the Seventh Circuit Court of Appeals' decision in *Westefer* the clear, indeed overwhelming, majority view among the federal trial courts in the Seventh Circuit, in light of *Wagner*, was that only a confinement in disciplinary segregation that resulted in the loss of accrued good time credit could trigger a due process liberty interest. *See Cunningham*, 472 F. Supp. 2d at 1030-33 (collecting cases). Correspondingly, assignment to a supermax prison in disciplinary segregation without the loss of good time credit or in non-disciplinary segregation was held routinely not to give rise to a liberty interest. *See id.* There is no need to repeat that survey here, save to say that only a very sagacious and far-seeing prison administrator could have been expected to discern a liberty interest in avoiding an assignment to a supermax prison in the Seventh Circuit.[8] But, of course, prison administrators need be neither far-sighted nor sagacious in order to enjoy qualified immunity; rather, they must be minimally competent and not deliberate lawbreakers. *See Malley v. Briggs*, 475 U.S. 335, 341 (1986) (observing that "the qualified immunity defense . . . provides ample protection to all but the plainly incompetent or those who knowingly violate the law."). Without meaning to suggest that *Wagner* has been overruled sub silentio or is now "bad law" after *Wilkinson*, the Court notes that the Seventh Circuit Court of

---

8. The Court recognizes that decisions of district courts, being non-precedential, cannot clearly establish constitutional rights for purposes of the qualified immunity doctrine. *See Lott v. Pfizer, Inc.*, 492 F.3d 789, 793-94 (7th Cir. 2007). The Court's purpose in referencing the majority view among district courts in the Seventh Circuit before *Wilkinson* is to show the absence of a clearly established constitutional liberty interest in avoiding assignment to a supermax prison.

Appeals has acknowledged on more than one occasion that *Wilkinson* compelled a rethinking of its position on due process in connection with assignments to segregated confinement. *See Gillis*, 468 F.3d at 492 (recognizing that the holding of *Wagner* had been modified in light of the Supreme Court's determination in *Wilkinson* that conditions of confinement in disciplinary segregation can constitute an atypical and significant hardship triggering a liberty interest in avoiding those conditions short of amounting to an Eighth Amendment violation); *Westefer*, 422 F.3d at 589 (alluding to "the now-governing standards of *Wilkinson*" in evaluating whether conditions at a supermax prison implicate a liberty interest in avoiding assignment there).

Because of the Court's order on qualified immunity in Case No. 00-708, Plaintiffs in Case No. 00-162 have not contested the issue of qualified immunity vigorously, although they have preserved the issue for appeal. They have adduced a statement by Defendant Welborn, who served as the first warden of the supermax prison at Tamms, in which Welborn, in the course of a videotaped orientation presentation designed to be shown to new correctional officers at Tamms, asserted his belief that assignment to the prison implicates procedural due process concerns.[9] The Court cannot view Welborn's statement as clearly establishing a constitutional right. He is not, so far as the Court knows, a lawyer, and a successor warden at Tamms (not to mention fellow wardens of prisons in the IDOC system) certainly was free to (and in fact, it appears, did) disregard his due process concerns, a reasonable enough thing to do given the avalanche of pre-*Wilkinson* judicial decisions in the Seventh Circuit finding no liberty interest in avoiding assignment to a supermax prison except under the extremely limited circumstances delineated in *Wagner*.

---

9.    Because Welborn's statement is contained in a document filed under seal, the Court does not quote the statement in this Order.

Plaintiffs also point out that since *Sandin* it has been clearly established that conditions of confinement that comprise an atypical and significant hardship in relation to the ordinary incidents of prison life can give rise to a due process liberty interest in avoiding those conditions. This is certainly so, but Plaintiffs frame the issue too broadly. "The words 'clearly established . . . constitutional rights' may not be used to read the defense of immunity out of federal tort law by the facile expedient of stating constitutional rights in the most general possible terms . . . . The right must be sufficiently particularized to put potential defendants on notice that their conduct probably is unlawful." *Azeez v. Fairman*, 795 F.2d 1296, 1301 (7th Cir. 1986) (quoting *Harlow*, 457 U.S. at 818). "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Brosseau*, 543 U.S. at 198-99. It is true that *Sandin* established as a general principle that inmates have a liberty interest in avoiding conditions of confinement that comprise an atypical and significant hardship. What was not clearly established at the time Plaintiffs in Case No. 00-162 were assigned to Tamms was whether conditions of confinement that neither prolonged imprisonment nor violated the Eighth Amendment were an atypical and significant hardship in relation to the ordinary incidents of prison life capable of giving rise to a due process liberty interest in avoiding those conditions.

Finally, Plaintiffs argue that the right Defendants are alleged to have violated should not be construed so narrowly as to read it out of existence, as by, for example, defining the right as a liberty interest in avoiding assignment to Tamms, rather than, say, to a supermax prison generally. The Court understands Plaintiffs' concern, but feels it is unfounded. As the federal trial court decisions

surveyed in the Court's order on qualified immunity in Case No. 00-708 show, before *Wilkinson* federal courts in the Seventh Circuit did not recognize a liberty interest in avoiding assignment to a supermax prison anywhere in the Seventh Circuit, save, again, in the very narrow circumstances set out in *Wagner*. Also, defining the right at issue as avoiding assignment to Tamms is not necessarily unfair. Whether conditions of confinement at Tamms give rise to a liberty interest is, as already has been discussed, a particularized and fact-intensive inquiry. As the Seventh Circuit Court of Appeals recognized recently, the harsh conditions of confinement at a supermax prison do not, of themselves, create a liberty interest. *See Townsend*, 522 F.3d at 772. By the same token, the fact that conditions at the OSP create a liberty interest, as was held in *Wilkinson*, does not mean ipso facto that those at Tamms do. And, as the Court noted in its order on qualified immunity in Case No. 00-708, whether conditions at Tamms create a liberty interest and, if so, whether adequate process exists to protect that interest remain open questions, as they are precisely the issues that must be decided in this lawsuit. *See Westefer*, 422 F.3d at 589-90 (recognizing that, on remand, this Court would be required to determine whether conditions at Tamms create a liberty interest and whether adequate procedures are being employed to protect that interest). Summary judgment will be granted on the grounds of qualified immunity as to the claims for damages of the named Plaintiffs in Case No. 00-162 in connection with their claims for violations of due process.

### 2. Plaintiff Santiago's Retaliation Claim

As noted, Defendants seek summary judgment on the retaliation claim alleged by Plaintiff Santiago. The operative complaint in Case No. 00-162 alleges that Santiago was assigned to Tamms in retaliation for filing grievances and lawsuits and engaging in other constitutionally protected speech with regard to the conditions of his confinement; the complaint alleges that Santiago's wife

also has been active in prison reform work. According to the complaint, the specific Defendants who retaliated against Santiago are Cowan, who recommended his assignment to Tamms, and Clark and Page, who approved the assignment. Defendants argue that a judgment in a related case, *Santiago v. Snyder*, Civil No. 02-1060-GPM (S.D. Ill. filed Oct. 4, 2002), which judgment subsequently was affirmed by the Seventh Circuit Court of Appeals, *see Santiago v. Snyder*, 211 Fed. Appx. 478 (7th Cir. 2006), is claim preclusive or issue preclusive with respect to Santiago's retaliation claim in this matter.[10] The Court agrees.

In Case No. 02-1060 Santiago asserted exactly the same retaliation claim that he asserts in Case No. 00-162. Santiago's retaliation claim in Case No. 02-1060 was dismissed with prejudice on summary judgment on the grounds of the statute of limitations, e.g., that Santiago had failed to bring suit within the applicable two-year limitations period. *See Wooden v. Barone*, No. 06-CV-790-JPG, 2007 WL 2481170, at *4 (S.D. Ill. Aug. 29, 2007); *Maxwell v. Village of Sauget, Ill.*, No. 06-451-GPM, 2007 WL 420195, at *3 (S.D. Ill. Feb. 5, 2007). The dismissal of Santiago's retaliation claim on the grounds of the statute of limitations in Case No. 02-1060 was an adjudication of the claim on the merits, *see Reinke v. Boden*, 45 F.3d 166, 168 (7th Cir. 1995), and therefore is preclusive with respect to the same claim in Case No. 00-162, notwithstanding the fact that Santiago's retaliation claim in Case No. 00-162 was brought before the claim in Case No. 02-1060 and was timely under the statute of limitations. *See Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 838 (7th Cir. 1999) (a judgment on the merits in a case is claim-preclusive in an earlier-filed case on the same claim); *Carr v. CIGNA Sec., Inc.*, 95 F.3d 544, 546 (7th Cir. 1996)

---

10.     Although the Seventh Circuit Court of Appeals generally prohibits citation of its unpublished opinions issued before January 1, 2007, it permits the citation of such opinions for the purpose of establishing, as here, claim preclusion or issue preclusion. *See* 7th Cir. R. 32.1(d).

(same); *Unger v. Consolidated Foods Corp.*, 693 F.2d 703, 705 (7th Cir. 1982) (same). *See also* 18

Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4404

(3d ed. 1998 & Supp. 2009) ("If two actions are pursued simultaneously the first judgment to be

entered is entitled to res judicata effect without regard to the order in which the two were

commenced[.]") (collecting cases). Summary judgment will be granted as to Santiago's

retaliation claim.[11]

### 3. Retaliation Claims of Plaintiffs V. Rodriguez and Harper

With respect to the question of summary judgment on the retaliation claims of Plaintiffs

V. Rodriguez and Harper, Defendants make a rather convoluted argument for qualified immunity

as to those claims. The argument is that Defendants did not violate a clearly established

constitutional right in assigning V. Rodriguez and Harper to Tamms because the lawsuits those

Plaintiffs claim they were retaliated against for filing were based on false statements and thus do not

constitute protected speech.[12] In other words, because V. Rodriguez and Harper have no clearly

established constitutional right to be free from retaliation for filing frivolous lawsuits,

Defendants are shielded from liability in damages for retaliating against them for filing the lawsuits

by assigning them to Tamms. This argument is ingenious but, in the Court's view, ultimately

unpersuasive.

---

11.    As already has been discussed, Santiago's retaliation claim in Case No. 00-162 previously was dismissed on summary judgment for failure to exhaust administrative remedies, but the Seventh Circuit Court of Appeals found an issue of fact as to whether any administrative remedy exists for an assignment to Tamms. *See Westefer*, 422 F.3d at 579-81.

12.    The specific Defendants identified in the operative complaint in Case No. 00-162 as having retaliated against V. Rodriguez are Clark and DeTella. The specific Defendants alleged to have retaliated against Harper are Clark and Carter.

"The federal courts have long recognized a prisoner's right to seek administrative or judicial remedy of conditions of confinement, . . . as well as the right to be free from retaliation for exercising this right." *Babcock v. White*, 102 F.3d 267, 276 (7th Cir. 1996) (denying qualified immunity for a retaliation claim). "Prisoners are entitled to utilize available grievance procedures without threat of recrimination[.]" *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005). To succeed on a retaliation claim, the plaintiff must "establish that his protected conduct was a motivating factor behind [the defendants' actions], but that should not end the inquiry." *Babcock*, 102 F.3d at 275. This is "[b]ecause the ultimate question is whether events would have transpired differently absent the retaliatory motive[.]" *Id.* (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). *See also Carr v. Whittenburg*, 462 F. Supp. 2d 925, 930 (S.D. Ill. 2006) (a plaintiff seeking to prove unlawful retaliation must show that constitutionally-protected conduct was a substantial motivating factor for an allegedly retaliatory action and that the retaliatory action would not have been taken had the plaintiff not engaged in the protected conduct).

While an inmate may not be retaliated against for complaining of the conditions of his or her confinement through, for example, the filing of grievances or lawsuits, an inmate may be disciplined for the language used in a grievance or punished for making false, libelous, threatening, or insolent statements in a grievance. *See, e.g., Hale v. Scott*, 371 F.3d 917, 919 (7th Cir. 2004) (holding that the First Amendment did not preclude punishment of an inmate for making libelous statements in a grievance); *Ustrak v. Fairman*, 781 F.2d 573, 580 (7th Cir. 1986) (upholding discipline of an inmate who had written a letter calling prison officials "stupid lazy assholes" and challenging them to "bring their fat asses around the gallery at night"); *Lehn v. Bryant*, No. 04-CV-3100, 2006 WL 2095787, at **6-7 (C.D. Ill. July 27, 2006) (dismissing an inmate's claim that he was retaliated

against for writing letters that were insolent and threatening). In this case, however, it is not clear whether V. Rodriguez and Harper lied in the lawsuits they claim they were retaliated against for filing. It appears from the record that the trier of fact found against both Plaintiffs on their respective claims challenging the conditions of their confinement, but this does not amount to clear and incontrovertible evidence that they lied. Where Defendants have not adduced uncontradicted evidence that V. Rodriguez and Harper lied in the lawsuits they claim they were retaliated against for filing, whether V. Rodriguez and Harper lied in their lawsuits is a question for the jury. *See Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). Summary judgment as to the retaliation claims of V. Rodriguez and Harper on the grounds of qualified immunity will be denied.[13]

### 4. Retaliation Claims Against Defendant Snyder

Finally, the Court addresses the question of whether summary judgment should be granted for Defendant Snyder on any retaliation claims asserted against him by Plaintiffs Von Perbandt, Taylor, Sparling, Sorrentino, E. Rodriguez, Lasley, Knox, Horton, Felton, Combs, Clayton, Chapman, Burrell, Bivens, and Cunningham. It appears to be undisputed that Snyder became the

---

13. As has been noted already, qualified immunity is only a defense to a claim for damages, not a complete defense to a claim under 42 U.S.C. § 1983. As a practical matter, however, were the Court to find that qualified immunity existed as to the retaliation claims of V. Rodriguez and Harper, it likely would be the death knell for those claims, as neither Plaintiff appears to have a plausible claim for equitable relief with respect to the alleged retaliation. *See Carr v. Whittenburg*, No. 3:01-cv-625-DGW, 2006 WL 1207286, at *3 (S.D. Ill. Apr. 28, 2006) (noting that a prisoner seeking equitable relief on a retaliation claim must show an ongoing threat of retaliation warranting issuance of an injunction).

director of the IDOC on January 12, 1999, after Von Perbandt, Taylor, Sparling, Sorrentino, E. Rodriguez, Lasley, Knox, Horton, Felton, Combs, Clayton, Chapman, Burrell, Bivens, and Cunningham were assigned to Tamms.[14]  Consistent with the general rule that liability under 42 U.S.C. § 1983 is not vicarious, "public employees are responsible for their own misdeeds but not for anyone else's," and not in the absence of evidence of the personal involvement of a state actor in an alleged deprivation of civil rights while acting under color of state law.  *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009).  *See also Monell v. Department of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694-95 (1978); *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001); *Walker v. Rowe*, 791 F.2d 507, 508 (7th Cir. 1986); *Duckworth v. Franzen*, 780 F.2d 645, 650 (7th Cir. 1985). Plaintiffs appear to concede that Snyder had no personal involvement in the assignment of Von Perbandt, Taylor, Sparling, Sorrentino, E. Rodriguez, Lasley, Knox, Horton, Felton, Combs, Clayton, Chapman, Burrell, Bivens, and Cunningham to Tamms and therefore is not a proper party to their retaliation claims in this matter.  Accordingly, summary judgment will be granted in Snyder's favor as to the retaliation claims of those Plaintiffs.[15]

---

14.    The record shows that:  Von Perbandt was transferred to Tamms on April 20, 1998; Taylor was transferred to Tamms on September 2, 1998; Sparling was transferred to Tamms on August 25, 1998; Sorrentino was transferred to Tamms on March 12, 1998; E. Rodriguez was transferred to Tamms on March 27, 1998; Lasley was transferred to Tamms on April 1, 1998; Knox was transferred to Tamms on August 24, 1998; Horton was transferred to Tamms on March 18, 1998; Felton was transferred to Tamms on March 30, 1998; Combs was transferred to Tamms on September 3, 1998; Clayton was transferred to Tamms on July 20, 1998; Marcus Chapman, Plaintiff Mary Chapman's decedent, was transferred to Tamms on March 26, 1998; Burrell was transferred to Tamms on August 28, 1998; Bivens was transferred to Tamms on July 16, 1998; and Cunningham was transferred to Tamms on April 12, 1998.

15.    A grant of summary judgment in Snyder's favor has no practical significance with respect to the retaliation claims of Von Perbandt, Taylor, Sparling, Sorrentino, E. Rodriguez, Lasley, Knox, Horton, Felton, Combs, Clayton, Chapman, Burrell, Bivens, and Cunningham because none of those Plaintiffs allege that Snyder was involved in their assignment to Tamms.

### C.    Trial Briefs

Having concluded that summary judgment must be denied as to the procedural due process claims asserted in this matter, save as to the issue of qualified immunity from damages, as a final matter the Court asks counsel for the parties to the consolidated cases to submit trial briefs in advance of the bench trial to be conducted on the procedural due process claims of Plaintiffs Westefer, Von Perbandt, Villazana, Tinajero, Taylor, Sparling, Sorrentino, Santiago, Ross, V. Rodriguez, E. Rodriguez, Reyna, Muller, Lasley, Knox, Johnson, Horton, Harper, Hall, Gill, Gambrell, Foutch, Felton, Combs, Coleman, Clayton, Clark, Chapman, Burrell, Bryant, Brown, Bivens, Cunningham, and the certified class.  In these briefs, counsel should state concisely the matters they hope to prove at trial and offer a brief description of the evidence they will present at trial as proof of those matters.  It will not be necessary to attach evidence to the briefs, although if evidence counsel intends to introduce at trial is already before the Court as, for example, part of the summary judgment record, counsel can point in their briefs to the location of the evidence in the record.  The parties' trial briefs should not exceed twenty pages.

Although the Court certainly has not pre-judged the issue of whether Plaintiffs and the members of the certified class are entitled to equitable relief on their procedural due process claims, the Court would like counsel in their trial briefs to pay particular attention to the question of what, in their view, an appropriate grant of equitable relief in this matter would look like.  The Court encourages counsel for the parties to consult with one another for the purpose of attempting to reach some degree of agreement about the kind of equitable relief that is proper here.  The Court recognizes that counsel no doubt have a great deal of work to do to prepare for the trial on the due process claims in this matter, as well as to prepare for trial on the retaliation claims asserted by

Plaintiffs Von Perbandt, Taylor, Sparling, Sorrentino, V. Rodriguez, E. Rodriguez, Lasley, Knox, Horton, Harper, Felton, Combs, Clayton, Chapman, Burrell, Bivens, and Cunningham. Nevertheless, the Court believes that trial briefs will be helpful in this instance. The due process claims before the Court present novel and complex issues of law, and the resolution of those issues is likely to impact the lives of all of the inmates in the IDOC system, present and future. The attorneys on both sides in this matter doubtless recognize the importance of reaching the correct result here, and the Court relies on their able assistance to reach that result. Accordingly, the Court will ask that counsel for the parties submit trial briefs in the form outlined above within thirty days of the date of entry of this Order.[16]

### III. Conclusion

Plaintiffs' motion for partial summary judgment (Doc. 266) is **DENIED**. Defendants' motion for partial summary judgment (Doc. 270) is **GRANTED in part and DENIED in part**. Summary judgment is **GRANTED** in Defendants' favor as to: Defendants' qualified immunity from damages on the due process claims asserted against them by the named Plaintiffs in Case No. 00-162; the retaliation claim asserted by Plaintiff Santiago; and any retaliation claims asserted against Defendant Snyder by Plaintiffs Von Perbandt, Taylor, Sparling, Sorrentino, E. Rodriguez, Lasley, Knox, Horton, Felton, Combs, Clayton, Chapman, Burrell, Bivens, and Cunningham. Summary judgment is **DENIED** as to qualified immunity on the retaliation claims

---

16. It is not clear to the Court whether Plaintiff Cunningham's counsel seeks to participate in the prosecution of his client's due process claim at trial. If so, Cunningham's counsel and counsel for Plaintiffs Westefer, Von Perbandt, Villazana, Tinajero, Sparling, Sorrentino, Santiago, Ross, V. Rodriguez, E. Rodriguez, Reyna, Muller, Lasley, Knox, Johnson, Horton, Harper, Hall, Gill, Gambrell, Foutch, Felton, Combs, Coleman, Clayton, Clark, Chapman, Burrell, Bryant, Brown, Bivens, and the class are invited to file a joint trial brief, if they wish.

of Plaintiffs V. Rodriguez and Harper. Counsel for the parties are directed to submit trial briefs of no more than twenty (20) pages in length outlining the case they will present at trial on the due process claims in this matter and addressing the manner of equitable relief that may properly be granted on those claims not later than thirty (30) days from the date of entry of this Order.[17]

**IT IS SO ORDERED.**

DATED:  September 4, 2009

/s/ G. Patrick Murphy
G. PATRICK MURPHY
United States District Judge

---

17.    As a result of this Order, the following claims remain pending before the Court:  retaliation claims by Plaintiffs Von Perbandt, Taylor, Sparling, Sorrentino, V. Rodriguez, E. Rodriguez, Lasley, Knox, Horton, Harper, Felton, Combs, Clayton, Chapman, Burrell, Bivens, and Cunningham; and claims of due process violations for equitable relief only (not damages) by Plaintiffs Westefer, Von Perbandt, Villazana, Tinajero, Taylor, Sparling, Sorrentino, Santiago, Ross, V. Rodriguez, E. Rodriguez, Reyna, Muller, Lasley, Knox, Johnson, Horton, Harper, Hall, Gill, Gambrell, Foutch, Felton, Combs, Coleman, Clayton, Clark, Chapman, Burrell, Bryant, Brown, Bivens, Cunningham, and the class.