IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT WESTEFER, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) CIVIL NO. 00-162-GPM |
| | ) |
| DONALD SNYDER, et al., | ) Consolidated with: |
| | ) CIVIL NO. 00-708-GPM |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

### I. INTRODUCTION

This matter is before the Court on the motion for a new trial brought by Plaintiff Bennie Cunningham (Doc. 530). In this case Cunningham, an inmate in the custody of the Illinois Department of Corrections ("IDOC") who currently is incarcerated in the closed maximum security prison ("supermax prison") at the Tamms Correctional Center ("Tamms"), asserts a claim under 42 U.S.C. § 1983 that he was transferred to the supermax prison at Tamms in retaliation for exercising his First Amendment right to file grievances and lawsuits challenging the conditions of his confinement. Additionally, Cunningham asserts a claim under Section 1983 that his placement at Tamms was in violation of his Fourteenth Amendment right of procedural due process. On December 7, 2009, trial on Cunningham's retaliation claim commenced, with the undersigned District Judge presiding. On December 8, 2009, at the close of Cunningham's case, the Court granted judgment as a matter of law on Cunningham's retaliation claim in favor of Defendants Donald Snyder, Odie Washington, Michael V. Neal, Richard McVicar,

George C. Welborn, Angela Winsor, Homer Markel, and Jack Hartwig pursuant to Rule 50 of the Federal Rules of Civil Procedure. Cunningham now has moved for a new trial on his retaliation claim, asserting various errors by the Court. The motion has been fully briefed, and the Court rules as follows.

## II. ANALYSIS

Under Rule 59 of the Federal Rules of Civil Procedure, a new trial may be granted "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). *See also ABM Marking, Inc. v. Zanasi Fratelli, S.R.L.*, 353 F.3d 541, 543 (7th Cir. 2003). A court may grant a new trial if "the verdict is against the clear weight of the evidence, the damages are excessive or the trial was unfair to the moving party." *Miksis v. Howard*, 106 F.3d 754, 757 (7th Cir. 1997). *See also Allison v. Ticor Title Ins. Co.*, 979 F.2d 1187, 1196 (7th Cir. 1992); *Peterson v. Farrakhan*, No. 2:03 CV 319 PS, 2007 WL 2025213, at *3 (N.D. Ind. July 9, 2007). Rule 61 of the Federal Rules of Civil Procedure also may be relevant to a motion for a new trial. Under Rule 61, "Unless justice requires otherwise, no error in admitting or excluding evidence – or any other error by the court or a party – is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." Fed. R. Civ. P. 61. Put another way, "[i]n order to receive a new trial, the defendant must show that the error was substantial enough to deny him a fair trial." *Perry v. Larson*, 794 F.2d 279, 285 (7th Cir. 1986). A court has the power and duty to order a new trial whenever, in its judgment, this action is required in order to prevent injustice, and a prejudicial error of law may justify a new trial. *See Kapelanski v. Johnson*, 390 F.3d 525, 530 (7th Cir. 2004);

*A.A. Poultry Farms, Inc. v. Rose Acre Farms, Inc.*, 683 F. Supp. 680, 696 (S.D. Ind. 1988). The decision whether to grant a motion for a new trial is within a trial court's discretion. *See Neal v. Honeywell*, Inc., 191 F.3d 827, 831 (7th Cir. 1999); *General Foam Fabricators, Inc. v. Tenneco Chems., Inc.*, 695 F.2d 281, 288 (7th Cir. 1982).

In the instant motion Cunningham asserts nine grounds for a grant of a new trial: the Court prevented him from calling Odie Washington as a witness; the Court permitted Cunningham's Court-appointed attorney to withdraw from representation of Cunningham without allowing Cunningham to respond to his attorney's motion to withdraw; the Court denied Cunningham the opportunity to present his case and to question witnesses; the Court denied Cunningham the opportunity to raise objections for purposes of the record on appeal; the Court compelled Cunningham to call his rebuttal witness, Henry Scates, during Cunningham's case-in-chief; the Court did not permit Cunningham to question prospective jurors; the Court erroneously granted judgment as a matter of law against Cunningham at the close of his case; the Court erroneously limited the issue at trial to whether Cunningham was transferred to Tamms in retaliation for engaging in protected activity, denying Cunningham the opportunity to prove that his continued placement at Tamms is retaliatory; and the Court erred in dismissing Donald Snyder as a Defendant. The Court will address each of these contentions in turn.

Turning first to the issue of whether the Court prevented Cunningham from calling Odie Washington as a witness at trial, the Court certainly did not do so. Washington could have been called as a witness, but Cunningham neither subpoenaed him nor sought to have Washington's deposition testimony admitted in evidence at trial. A motion for a new trial is "not merely intended to secure a forum for the relitigation of old matters or to afford the parties

the opportunity to present the case under new theories; instead, the motion is a device properly used to correct manifest errors of law or fact or to present newly discovered evidence." *Fort Howard Paper Co. v. Standard Havens, Inc.*, 901 F.2d 1373, 1380 n.4 (7th Cir. 1990); *St. Clair v. Pipal*, 611 F. Supp. 911, 915 (E.D. Wis. 1985). Where Cunningham could have called Washington as a witness at trial but did not do so, Washington's absence as a witness at trial is not grounds for a grant of a new trial in this instance. *See Chavez v. City of Albuquerque*, 640 F. Supp. 2d 1340, 1343 (D.N.M. 2008) (a motion for a new trial is not intended to be a device for a litigant "to introduce new evidence that was available at the time of trial but was not proffered[.]"); *Lyons v. Jefferson Bank & Trust*, 793 F. Supp. 989, 991 (D. Colo. 1992) (same).[1]

Turning next to the issue of whether the Court erred in permitting Richard D. Murray, Jr., Cunningham's Court-appointed attorney, to withdraw from further representation of Cunningham without awaiting a response from Cunningham to Murray's motion to withdraw, the Court finds no merit in this asserted ground for a new trial. In Murray's motion to withdraw, the attorney, who represented Cunningham for approximately six years, stated that he and Cunningham had significant and intensifying disagreements regarding litigation strategy with respect to Cunningham's retaliation claim. *See* Civil Case No. 00-708, Doc. 117 at 1 ¶ 2. Murray further represented that Cunningham wanted him to pursue claims not warranted under existing law and had threatened to sue Murray for

---

1. Additionally, Cunningham does not explain what testimony Washington could have offered that would have been relevant to Cunningham's retaliation claim, or how Washington's testimony would have altered the ultimate disposition of that claim. The Court notes that, although Washington was the Director of the IDOC at the time Cunningham was transferred to Tamms, no evidence emerged at trial showing that Washington was personally involved in the decision to send Cunningham to Tamms, as was required, of course, to impose liability on Washington under 42 U.S.C. § 1983. *See Walker v. Rowe*, 791 F.2d 507, 508 (7th Cir. 1986); *Duckworth v. Franzen*, 780 F.2d 645, 650 (7th Cir. 1985).

legal malpractice if Murray did not do so.  *See id*. ¶¶ 2-3.  The Court had (and has) no reason to disbelieve Murray's representations in his motion to withdraw.  As Defendants' counsel point out in their response to Cunningham's motion for a new trial, Cunningham is not entitled as a matter of right to Court-appointed counsel in this litigation.  *See Synergy Assocs., Inc. v. Sun Biotechnologies, Inc.*, 350 F.3d 681, 683 (7th Cir. 2003); *Lewis v. Sullivan*, 279 F.3d 526, 529 (7th Cir. 2002); *Stroe v. INS*, 256 F.3d 498, 500 (7th Cir. 2001).  Moreover, it was Murray's duty as an officer of the Court to withdraw from further representation of Cunningham under the circumstances described by Murray in his motion to withdraw.  *See Carr v. Tillery*, Nos. 09-1124, 09-1168, 2010 WL 92487, at *9 (7th Cir. Jan. 12, 2010) (attorneys "neglect[ ] their duties as officers of the state and federal courts by failing to rein . . . in" clients who wish to pursue frivolous claims and legal theories).  The Court did not err in granting Murray's motion to withdraw without waiting for Cunningham's response to the motion.

      The Court turns next to Cunningham's claims that the Court denied him the opportunity to present his case and to question witnesses and denied him the opportunity to register objections at trial.  The Court will deal with these objections together, as they go essentially to the Court's authority over the order of interrogating witnesses and presenting evidence at trial.  Under Rule 611 of the Federal Rules of Evidence, a court is directed to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of truth, [and] (2) avoid needless consumption of time[.]"  Fed. R. Evid. 611(a).  *See also United States v. Reynolds*, 189 F.3d 521, 529 (7th Cir. 1999).  Under Rule 611 "the district court . . . has the responsibility to exercise reasonable control over the interrogation of witnesses . . . . On that judicial officer's shoulders rests the

responsibility for the orderly progression of trial." *United States v. Mohammad*, 53 F.3d 1426, 1434 (7th Cir. 1995) (citing *United States v. Blakey*, 607 F.2d 779, 788 (7th Cir. 1979)). In this instance the Court attempted to fulfill its responsibility to control the interrogation of witnesses at the trial on Cunningham's retaliation claim by imposing reasonable time limits on Cunningham's questioning of witnesses in an effort to prevent Cunningham from indulging in irrelevant and repetitious questioning "in the interests of ascertaining the truth and avoiding needless consumption of time." *United States v. Griffin*, 194 F.3d 808, 830 (7th Cir. 1999) (quoting *United States v. Wilson*, 134 F.3d 855, 866 (7th Cir. 1998)). *See also United States v. Carter*, 410 F.3d 942, 951-52 (7th Cir. 2005) (affirming a trial court's imposition of a time limit on the testimony of a party); *McKnight v. General Motors Corp.*, 908 F.2d 104, 115 (7th Cir. 1990) (noting that "in this age of swollen federal caseloads district judges must manage their trials with an iron hand – must scrutinize the witness list and the exhibit list with a beady eye and ruthlessly prune redundant or marginal evidence. We do not reverse district judges who do this . . . . We commend them."). Similarly, while the Court may not have permitted Cunningham to register objections at the trial on his retaliation claim in as much detail and as at much length as he might have liked, the Court certainly did not prevent Cunningham from raising his objections at trial, and in his motion for a new trial Cunningham does not identify any objection that he would have liked to have raised at trial but was denied the opportunity to do so.

With respect to Cunningham's next asserted ground for a new trial, that the Court refused to permit Cunningham to present the testimony of Henry Scates on rebuttal and insisted that Scates testify, if at all, as part of Cunningham's case-in-chief, this objection also pertains, of course, to the Court's management of the interrogation of witnesses and the presentation of evidence at trial.

The Court's decision regarding Scates was motivated by the fact that he is an inmate in the custody of the IDOC who appeared at the trial on Cunningham's retaliation claim pursuant to a writ of habeas corpus ad testificandum. Allowing Scates to testify on rebuttal rather than as part of Cunningham's case-in-chief would have required the IDOC and the Court's security personnel to find a prison cell near the site of the trial where Scates could be confined overnight. The Court was entitled to balance Cunningham's interest in Scates's testimony and in his preferred trial strategy against considerations of prison administration and security. *See Ford v. Carballo*, 577 F.2d 404, 407-08 (7th Cir. 1978); *Stone v. Morris*, 546 F.2d 730, 737 (7th Cir. 1976); *In re Warden of Wis. State Prison*, 541 F.2d 177, 179-81 (7th Cir. 1976). In striking that balance, Cunningham's preferred trial strategy was required to yield. In any event, the particular point in the trial at which Scates testified ultimately had no effect on the disposition of Cunningham's retaliation claim, given that Scates had no evidence relevant to the issue of whether the decision to send Cunningham to Tamms was retaliatory.

      Concerning the fact that the Court did not permit Cunningham to question prospective jurors, in general, of course, the conduct of voir dire is committed to a trial judge's discretion and the judge is permitted to conduct voir dire alone, without the questioning of prospective jurors by parties or their counsel, provided that such court-conducted voir dire is adequate to expose possible biases on the part of prospective jurors. *See* Fed. R. Civ. P. 47(a) ("The court may permit the parties or their attorneys to examine prospective jurors or may itself do so."); *Chlopek v. Federal Ins. Co.*, 499 F.3d 692, 702 (7th Cir. 2007) (citing *Gardner v. Barnett*, 199 F.3d 915, 920-21 (7th Cir. 1999)) ("The trial court has broad discretion over the selection of questions to potential jury members, and the parties have no right to have a particular question posed."); *Art Press, Ltd. v. Western Printing*

*Mach. Co.*, 791 F.2d 616, 618 (7th Cir. 1986) (quoting *United States v. Dellinger*, 472 F.2d 340, 368 (7th Cir. 1972)) (in conducting voir dire, the "trial court must permit 'sufficient inquiry into the background and attitudes of the jurors to enable [the parties] to exercise intelligently their peremptory challenges[.]'"); *Fietzer v. Ford Motor Co.*, 622 F.2d 281, 285 (7th Cir. 1980) (quoting *United States v. Lewin*, 467 F.2d 1132, 1138 (7th Cir. 1972)) ("[T]he trial court has the affirmative duty to pose questions that go beyond what may bring out information that would disqualify the juror for cause . . . . Thus it is essential to explore the backgrounds and attitudes of the jurors to some extent in order to discover actual bias, or cause . . . . In its entirety, the examination must reveal inquiry adequate 'to call to the attention of the veniremen those important matters that might lead them to recognize or to display their disqualifying attributes.'"); *Beard v. Mitchell*, 604 F.2d 485, 501 (7th Cir. 1979) (quoting *Dellinger*, 472 F.2d at 367) ("There is of course no rigid standard for determining the adequacy of the voir dire . . . . '[T]he focus is exclusively on whether the procedure used for testing impartiality created a reasonable assurance that prejudice would be discovered if present.'"); *Dozier v. Stampnick*, No. 88 C 9691, 1992 WL 132849, at *3 (N.D. Ill. May 29, 1992) (although a trial court has great discretion in conducting voir dire, this discretion is subject to the parties' right to an impartial jury, and therefore in conducting voir dire a trial judge must ask questions that "enable the parties to intelligently exercise the right to challenge, whether for cause or peremptorily").  Here Cunningham does not assert that the Court conducted an inadequate voir dire at the trial on Cunningham's retaliation claim, nor does he identify an area of inquiry that he wished the Court to ask prospective jurors about but about which the Court declined to inquire.  Accordingly, the Court finds that its conduct of voir dire is not grounds for a new trial.

The Court turns next to Cunningham's contention that the Court erroneously granted judgment as a matter of law against Cunningham at the close of his case. The Court does not agree. In order to make out a prima facie claim "for violation of first amendment rights, [plaintiffs] must present evidence that (1) their speech was constitutionally protected; (2) they suffered a deprivation likely to deter free speech; and (3) their speech caused the [defendant's] actions." *Gunville v. Walker*, 583 F.3d 979, 983 (7th Cir. 2009). In light of *Gross v. FBL Financial Services, Inc.*, 129 S. Ct. 2343 (2009), "[t]his means but-for causation." *Fairley v. Andrews*, 578 F.3d 518, 525 (7th Cir. 2009). "Some decisions . . . say that a plaintiff just needs to show that his speech was a motivating factor in defendant's decision. These decisions do not survive *Gross*, which holds that, unless a statute (such as the Civil Rights Act of 1991) provides otherwise, demonstrating but-for causation is part of the plaintiff's burden in all suits under federal law." *Id*. at 525-26. *See also Delapaz v. Richardson*, No. 07 C 1224, 2009 WL 5217339, at *3 (N.D. Ill. Dec. 28, 2009) (granting summary judgment as to civil rights claims alleging that the plaintiffs were demoted on the basis of their political affiliation where the evidence showed at most that protected activity was a motivating factor in the demotion decision: "[T]he standard is but-for causation. A motivating factor is not enough in the face of undisputed evidence that the decision was made for budgetary and operational reasons."). Additionally, in order to show that protected conduct caused a retaliatory deprivation, plaintiffs "must first show that the defendants knew of their [protected conduct]." *Gunville*, 583 F.3d at 984. In the course of Cunningham's entire presentation of his evidence, which took over a day and entailed, in addition to Cunningham's testimony, the testimony of eight other witnesses (Michael Neal, Jack Hartwig, George Welborn, Jerry Gilmore, Henry Scates, Angela Winsor, Homer Markel, and Richard McVicar), Cunningham failed to adduce a shred of evidence that any

Defendant was aware of Cunningham's history of filing grievances and lawsuits regarding the conditions of his confinement, much less that Cunningham's protected conduct was the sole or but-for cause of his transfer to Tamms. Although it is plain from Cunningham's own testimony that he is firmly convinced that he was transferred to Tamms in retaliation for filing grievances and lawsuits, his uncorroborated testimony is no more sufficient to create a jury issue at the Rule 50 stage than it is at the stage of a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *See Ford v. Minteq Shapes & Servs., Inc.*, 587 F.3d 845, 848 (7th Cir. 2009) ("The record's only evidence of Minteq paying more to white employees with equal responsibilities is Ford's own conclusory, uncorroborated testimony. This is not enough to survive summary judgment."); *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 939 (7th Cir. 1997) ("As we have repeatedly explained, a plaintiff's own uncorroborated testimony is insufficient to defeat a motion for summary judgment."); *Cowan v. Glenbrook Sec. Servs., Inc*., 123 F.3d 438, 446 (7th Cir. 1997) ("Plaintiff's own uncorroborated testimony is insufficient to defeat [the defendant's] motion for summary judgment."); *Edward E. Gillen Co. v. City of Lake Forest*, 3 F.3d 192, 196 (7th Cir. 1993) ("We have previously held that a party seeking to avoid summary judgment may not establish a dispute of material fact with unsubstantiated assertions in its factual summary or in affidavits."). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986) (the standard for granting summary judgment under Rule 56 and the standard for granting judgment as a matter of law under Rule 50 "is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."). The Court did not err in granting judgment as a matter of law for Defendants at the close of Cunningham's evidence.

Concerning whether the Court erred in limiting the issue at trial to whether Cunningham's original transfer to Tamms was retaliatory and refusing to allow Cunningham to challenge his continued placement at Tamms as retaliatory, the Court concludes that it did not err.  In the final pretrial order entered regarding Cunningham's retaliation claim, the claim is characterized thus: "[P]laintiff alleges the defendants placed plaintiff at Tamms Correctional Center, the State of Illinois' highest security facility, in retaliation for his filing lawsuits and grievances.  Plaintiff seeks compensatory and punitive damages."  Civil Case No. 00-708, Doc. 55 at 1.  The final pretrial order, which clearly identifies Cunningham's claim as being that his original transfer to Tamms was retaliatory, superseded all pleadings in the case and defined the scope of the evidence and argument to be heard at the trial on Cunningham's retaliation claim.  *See Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 (2007) (citing Fed. R. Civ. P. 16) (a final pretrial order supersedes all prior pleadings in a case and "control[s] the subsequent course of the action"); *Erff v. MarkHon Indus., Inc.*, 781 F.2d 613, 617 (7th Cir. 1986) ("[T]he pretrial order is treated as superseding the pleadings and establishes the issues to be considered at trial."); *Petit v. City of Chicago*, 239 F. Supp. 2d 761, 771 (N.D. Ill. 2002) ("Evidence or theories not raised in the pretrial order are properly excluded at trial.").  The parties defending against Cunningham's retaliation claim were entitled to rely on Cunningham's characterization of that claim in the final pretrial order and to prepare their defense at trial accordingly.  *See Nagy v. Riblet Prods. Corp.*, 79 F.3d 572, 575 (7th Cir. 1996) ("The document controlling the course of trial is the pretrial order . . . . Each side plans for trial on the assumption that it needs to meet only the contentions its adversary identifies in that order.").  The Court did not err in limiting Cunningham at trial to the issue of whether his original placement at Tamms was retaliatory.

Finally, the Court addresses Cunningham's contention that the Court erred in dismissing Donald Snyder as a party Defendant to Cunningham's retaliation claim. In a previous order in this case, the Court granted summary judgment for Snyder on Cunningham's retaliation claim in light of uncontroverted evidence that Cunningham was transferred to Tamms on April 12, 1998, while Snyder became the Director of the IDOC on January 12, 1999, so that as a matter of law Snyder could not have had any personal involvement in the decision to transfer Cunningham to Tamms. *See Westefer v. Snyder*, Civil Nos. 00-162-GPM, 00-708-GPM, 2009 WL 2905548, at *14 & n.14 (S.D. Ill. Sept. 4, 2009). *See also Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (discussing the requirement of personal involvement in claims under 42 U.S.C. § 1983); *Eades v. Thompson*, 823 F.2d 1055, 1063 (7th Cir. 1987) (same). The Court's grant of summary judgment in Snyder's favor established the law of the case as to Snyder's liability to Cunningham for retaliation. *See Tice v. American Airlines, Inc.*, 373 F.3d 851, 853 (7th Cir. 2004); *Avitia v. Metropolitan Club of Chicago, Inc.*, 49 F.3d 1219, 1227 (7th Cir. 1995); *Potter v. Janus Inv. Fund*, 483 F. Supp. 2d 692, 708-09 (S.D. Ill. 2007). Thus, the Court did not err in dismissing Snyder. Cunningham has failed to establish grounds for a new trial on his retaliation claim.

### III. CONCLUSION

For all of the foregoing reasons, Cunningham's motion for a new trial (Doc. 530) is **DENIED**.

**IT IS SO ORDERED.**

DATED:  January 25, 2010

/s/ G. Patrick Murphy  
G. PATRICK MURPHY  
United States District Judge