IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ROBERT WESTEFER, et al.,** | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) CIVIL NO. 00-162-GPM |
| | ) |
| **DONALD SNYDER, et al.,** | ) Consolidated with: |
| | ) CIVIL NO. 00-708-GPM |
| Defendants. | ) |

## <u>MEMORANDUM AND ORDER</u>

**MURPHY, District Judge:**

### I. INTRODUCTION

This matter is before the Court on a motion for a stay of the judgment in this case brought by Defendants Donald Snyder, Odie Washington, Michael V. Neal, George DeTella, Michael O'Leary, Dwayne Clark, Jerry Gilmore, Rodney Ahitow, Roger Cowan, Thomas Page, Roger Walker, Salvador Godinez, Guy Pierce, Barbara Hurt, Rick Orr, Ronald Meek, Jason Garnett, Deirdre Battaglia, Eddie Jones, Don Hulick, and Roger Zimmerman (Doc. 563).[1] This case is a class action concerning the adequacy, under the Due Process Clause of the Fourteenth Amendment to the Constitution, of the procedures employed by the IDOC to place inmates in IDOC custody at the closed maximum security prison ("supermax prison") at Tamms Correctional Center ("Tamms") in

---

1. In point of fact, the motion purports to be brought by Neal, Page, and Michael Randle. It seems more logical to the Court to construe the motion as being brought by all of the current Defendants in the case. Michael Randle is the former Director of the Illinois Department of Corrections ("IDOC"), and therefore it is difficult to see why he should be a party to this case. In any event, Randle has never been formally substituted as a Defendant pursuant to Rule 25 of the Federal Rules of Civil Procedure.

Tamms, Illinois. The class representatives are: Aryules Bivens; Larry Brown; Finner Bryant; Roosevelt Burrell; Mary Chapman, as the administrator of the estate of Marcus Chapman; Gary Clark; Leverne Clayton; Maurice Coleman; Kennard Combs; Robert Felton; Larry Foutch; Larry Gambrell; John Gill; Timothy Hall; George Harper; Eugene Horton; Michael Johnson; Ted Knox; William Lasley; Alex Muller; Vincent Reyna; Edward Rodriguez; Vincente Rodriguez; Tyshawn Ross; Anibal Santiago; Joe Sorrentino; Michael Sparling; Armando Tinajero; Alejandro Villazana; Mark Von Perbandt; and Robert Westefer.

On July 20, 2010, the Court entered its findings of fact and conclusions of law and issued a permanent injunction as to the class-action claims in this case. In its findings of fact and conclusions of law, the Court found that conditions of confinement in the supermax prison at Tamms comprise an atypical and significant hardship in relation to the ordinary incidents of prison life such that inmates in IDOC custody have a Due Process liberty interest in avoiding confinement in the supermax prison at Tamms. *See Westefer v. Snyder*, No. CIV 00-162-GPM, CIV 00-708-GPM, 2010 WL 2836800, at *29 (S.D. Ill. July 20, 2010). The Court found further that existing procedures for placing inmates in IDOC custody at Tamms are not adequate to protect the liberty interest of such inmates in avoiding confinement in the supermax prison. *See id*. at *52. The Court reviewed the so-called "Ten-Point Plan" (hereinafter, "the Ten-Point Plan" or "the Plan") developed by then-IDOC Director Michael Randle, a system of reforms concerning the supermax prison at Tamms. In particular the Court was concerned with Point One of the Plan, which calls for all inmates transferred to Tamms to receive a transfer review hearing regarding their placement at Tamms shortly after their arrival at the supermax prison. *See id*. at **44-46. The Court adopted Point One of the Ten-Point Plan as its grant of injunctive relief with respect to the class-action

claims in this case, subject to two fairly minor revisions: first, that all inmates under consideration for placement at Tamms receive advance notice in writing forty-eight hours before their transfer review hearing of the reason that they are being considered for placement at the supermax prison; and second, that all inmates confined at Tamms in disciplinary segregation as of the date of entry of the Court's judgment on the class-action claims in this case must receive a transfer review hearing within ninety days of entry of the judgment. *See id*. at \*\*52-53. Defendants now request a stay of execution of the Court's judgment pending an appeal therefrom. The motion has been fully briefed by the parties, and the Court rules as follows.

## II. ANALYSIS

As an initial matter, the Court notes the standard under which it must evaluate the instant request for a stay of the Court's judgment pending appeal. Under Rule 62 of the Federal Rules of Civil Procedure, a district court may stay an injunction pending appeal. *See* Fed. R. Civ. P. 62(c). *See also* Fed. R. App. P. 8(a) (providing that, where a stay of an injunction pending appeal has been denied by a district court, the request for a stay may be renewed in the appellate court). Such a stay is considered "extraordinary relief" for the granting of which the moving party bears a "heavy burden" of proof. *Winston-Salem/Forsyth County Bd. of Educ. v. Scott*, 404 U.S. 1221, 1231 (1971) (Burger, C.J., in chambers) (denying a stay of a school desegregation order). The decision concerning a stay pending appeal is akin to the equitable decision to grant or deny preliminary injunctive relief. Thus, in determining whether or not to issue a stay of an injunction pending an appeal, a court should consider: (1) whether the appellant has shown a likelihood of success on appeal; (2) whether the appellant has demonstrated a likelihood of irreparable harm if a stay is not granted; (3) whether a stay would substantially harm other parties to the litigation; and (4) the public

interest. *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) (Rehnquist, C.J.) (vacating the judgment of a court of appeals denying an application for a stay pending appeal); *Glick v. Koenig*, 766 F.2d 265, 269 (7th Cir. 1985) (affirming a denial of a stay pending appeal); *Indianapolis Colts v. Mayor & City Council of Baltimore*, 733 F.2d 484, 486 (7th Cir. 1984) (a stay pending appeal was granted in part to allow parallel litigation to proceed and denied in part to allow a professional football team to prepare to play in a new city); *Adams v. Walker*, 488 F.2d 1064, 1065 (7th Cir. 1973) (a stay pending appeal is "an extraordinary remedy" and in determining whether to grant such a stay a court must consider whether movants are "likely to prevail on the merits of [their] appeal" and, in addition, "(a) whether movants have shown that unless a stay is granted they will suffer irreparable injury[,] (b) whether a stay would substantially harm other parties to the litigation[,] and (c) where lies the public interest?"). *Cf. Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.*, 128 F.3d 1111, 1114 (7th Cir. 1997) (in granting or denying preliminary equitable relief, a court must weigh whether the movant has shown a likelihood of success, whether the movant has demonstrated a likelihood of irreparable harm if relief is not granted, whether the requested injunction, if granted, would substantially harm other parties to the case, and the public interest).

When weighing the factors of likelihood of success on the merits, the balance of harms, and the public interest, a court "seek[s] at all times to 'minimize the costs of being mistaken.'" *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992) (quoting *American Hosp. Supply Corp. v. Hospital Prods. Ltd.*, 780 F.2d 589, 593 (7th Cir. 1986)) (vacating a district court's denial of a preliminary injunction). *See also Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 388 (7th Cir. 1984) (in determining whether to grant or deny an injunction and weighing the movant's likelihood of success on the merits, the balance of harms, and the public interest, "the task for the

district judge . . . is to minimize errors: the error of denying an injunction to one who will in fact (though no one can know this for sure) go on to win the case on the merits, and the error of granting an injunction to one who will go on to lose."). If the threat of irreparable harm is grave, a stay may be appropriate even if the appellant's prospects of success on the merits are not bright. *See Books v. City of Elkhart*, 239 F.3d 826, 828 (7th Cir. 2001) (Ripple, J., in chambers) (granting a stay pending appeal where both sides agreed a stay was appropriate). "The granting or denying of . . . motions [for equitable relief] has traditionally been left to the sound discretion of the district judge." *Lawson Prods., Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1434 (7th Cir. 1986). *See also Robbins v. Pepsi-Cola Metro. Bottling Co.*, 637 F. Supp. 1014, 1019 (N.D. Ill. 1986) (Rule 62(c) "permits a district court, in its discretion, to stay the enforcement of an order granting injunctive relief."); 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2904 (2d ed. 1987 & Supp. 2010) ("An application under Rule 62(c) . . . necessarily goes to the discretion of the court.") (collecting cases).

Turning then first to whether Defendants have shown a likelihood of success on the merits, the Court agrees with a sister federal trial court in this Circuit that said,

> The first factor, "likelihood of success," presents the most conceptual difficulty. Obviously, we think an appeal will probably fail; we have reviewed our opinion and stand by it. Had we thought an appeal would be successful, we would not have ruled as we did in the first place. But a party seeking a stay need not show that it is more than 50% likely to succeed on appeal; otherwise, no district court would ever grant a stay. It is enough that the [movant] have a substantial case on the merits.

*Thomas v. City of Evanston*, 636 F. Supp. 587, 590 (N.D. Ill. 1986). That being said, the Court does not believe that Defendants have shown that they have a substantial case on the merits. It may very well be that the United States Court of Appeals for the Seventh Circuit will modify the relief granted

by this Court, and indeed the Court welcomes the guidance of that court as to the novel and difficult constitutional questions presented by the class-action claims in this case. Nevertheless, the Court sees absolutely no likelihood that its most crucial finding, that conditions of confinement in the supermax prison at Tamms create a liberty interest in avoiding confinement there, will be overturned. Whatever may happen in this case on appeal, there is simply no way that matters are going to return to the status quo that prevailed before the decisions of the Supreme Court of the United States and the Seventh Circuit Court of Appeals in, respectively, *Wilkinson v. Austin*, 545 U.S. 209 (2005), and *Westefer v. Snyder*, 422 F.3d 570 (7th Cir. 2005). Henceforth, all inmates under consideration for placement in the supermax prison at Tamms are going to have to receive notice and an opportunity to be heard before they are assigned to the supermax prison. Moreover, the Court believes that, whatever the final form that equitable relief in this case may take, it necessarily will resemble the relief already granted by the Court: that is to say, an inmate under consideration for placement at Tamms will be given a hearing regarding the propriety of such placement, together with notice of the reason he is being considered for Tamms placement in advance of the hearing. The Court concludes that Defendants have not shown that they have a likelihood of success on the merits on appeal.

      With respect to the balance of harms, Defendants contend that they will be irreparably harmed if IDOC personnel are required to conduct transfer review hearings as ordered by the Court. Again, the Court does not agree. In its order on classwide equitable relief, the Court endeavored to craft a remedy that was narrowly tailored to relieve the constitutional defects in IDOC procedures for placing inmates in the supermax prison at Tamms. *See Westefer*, 2010 WL 2836800, at *48 (citing 18 U.S.C. § 3626(a)(1)(A)). Correspondingly, the relief ordered by the Court is, in essence,

merely what Defendants' own witnesses in this case informed the Court is now IDOC policy. For example, former IDOC Director Randle testified that it is now IDOC policy for all inmates transferred to Tamms to receive a transfer review hearing shortly after their arrival at the supermax prison. *See id*. at \*\*44-46. Randle testified also that, in the space of a little less than three months, IDOC personnel were able to review the jackets of 133 long-term inmates of the supermax prison at Tamms, and to order forty-eight of those inmates to be transferred out of the supermax prison. *See id*. at \*47. Although Randle is no longer the Director of the IDOC, the Ten-Point Plan was developed at the behest of, and approved by, Patrick Quinn, the Governor of Illinois. *See id*. at \*\*2-3, \*20. The Court has no reason to suppose that the Plan is no longer the policy of the IDOC. Also, the population of Tamms generally is about 250 inmates at any given time. *See id*. at \*\*5-6. Thus, the Court's order that inmates newly arrived at Tamms and inmates housed at Tamms in disciplinary segregation when the Court's judgment in this case was entered receive transfer review hearings affects something less than one hundred inmates. Where IDOC personnel were able to review the jackets of over half the inmates at Tamms in less than three months, the Court fails to see why IDOC personnel cannot review the transfers of something less than one hundred Tamms inmates in approximately the same period of time. In sum, the Court does not believe that conducting transfer review hearings for fewer than one hundred inmates is so onerous as to warrant staying execution of the Court's judgment.

Moreover, the harm to Defendants if the Court's judgment is not stayed does not outweigh the likely harm to Plaintiffs and the class if the stay is granted. Given that the IDOC recently found reason to transfer forty-eight long-term inmates out of Tamms, the Court believes that there is a high likelihood that, if IDOC performs the transfer review hearings that the Court has ordered, at least

some inmates whose transfers are reviewed pursuant to the Court's order will be found to be eligible to be transferred out of the supermax prison. In the Court's view, it is far more burdensome to an inmate who already has served a lengthy term of confinement in the supermax prison at Tamms and who could be transferred out of the supermax prison to remain in confinement there while Defendants pursue an appeal from the Court's judgment in this case than it is for IDOC personnel to perform the transfer review hearings as ordered. *See Lagerstrom v. Kingston*, 463 F.3d 621, 622, 623 (7th Cir. 2006) (alluding to the "draconian" conditions of confinement at a "[s]upermax" prison); *Westefer*, 422 F.3d at 573 ("Tamms is the highest security prison in Illinois. IDOC designed the conditions there to be harsh, so that the threat of being transferred to Tamms would deter prisoners throughout the system from disobeying prison rules."); *Westefer*, 2010 WL 2836800, at **5-18 (quoting *Westefer*, 422 F.3d at 589) (making detailed findings of fact with respect to conditions of confinement in the supermax prison at Tamms and concluding that long-term confinement there amounts to "virtual sensory deprivation").

Finally, with respect to the public interest, as Defendants point out there is a public interest in conserving state resources. However, this interest actually is furthered by requiring the IDOC to perform transfer review hearings as ordered, because every inmate transferred out of Tamms represents a significant saving of expenses for taxpayers, given the extraordinarily high cost of confining inmates in the supermax prison at Tamms. *See Westefer*, 2010 WL 2836800, at *51 (then-IDOC Director Randle testified that it costs Illinois taxpayers between $53,000 and $57,000 per year to confine a prisoner in the supermax prison at Tamms, as opposed to approximately $23,000 per year on average to house an IDOC inmate at a lower-security prison in the IDOC system). Also, there is a public interest in ensuring that state agencies comply with the law by,

for example, employing constitutionally adequate procedures when placing inmates in supermax confinement. The Constitution of the State of Illinois provides specifically that the Governor (and, by necessary inference, his or her appointees in the executive branch of the state government) "shall be responsible for the faithful execution of the laws." Illinois Const. art. 5, § 8. *See also Kremers v. Coca-Cola Co.*, Civil No. 09-333-GPM, 2010 WL 1707061, at *10 (S.D. Ill. Apr. 27, 2010) ("[I]n general the public policy of the State of Illinois is gleaned from its statutes, judicial decisions, constitution, and the practices of its government officials.") (collecting cases). The Court concludes that Defendants have failed to show grounds for a stay of the Court's judgment pending an appeal therefrom.[2]

### III. CONCLUSION

Defendants' motion for a stay of the judgment in this case pending appeal (Doc. 563) is **DENIED**. Defendants may renew their request for a stay of the Court's judgment pending an appeal therefrom in the Seventh Circuit Court of Appeals.

**IT IS SO ORDERED.**

DATED: October 12, 2010

/s/ G. Patrick Murphy
G. PATRICK MURPHY
United States District Judge

---

2. To the extent Defendants request a stay of the judgment on the jury verdict returned in favor of Plaintiffs Sorrentino, Knox, Bivens, and Burrell against Defendants Neal and Page, the Court notes that Neal and Page have not even begun to make the requisite showing for a stay of the judgment and, therefore, any such stay will be denied.