# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT WESTEFER, et al., | ) |
| Plaintiffs, | ) |
| vs. | ) CIVIL NO. 00-162-GPM |
| DONALD SNYDER, et al., | ) Consolidated with: |
| | ) CIVIL NO. 00-708-GPM |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

This matter is before the Court on the following documents: the "Affidavit" filed by Maurice Wallace, construed by the Court as a motion to intervene (Doc. 601); Wallace's motion for a temporary restraining order ("TRO") (Doc. 602); the motion to strike Wallace's motion to intervene brought by Defendants Donald Snyder, Odie Washington, Michael V. Neal, George DeTella, Michael O'Leary, Thomas Page, Dwayne Clark, Roger Cowan, Rodney Ahitow, Roger Walker, Roger Zimmerman, Don Hulick, Deidre Battaglia, and Eddie Jones (Doc. 603); and the motion to strike Wallace's motion for a TRO brought by Defendants (Doc. 607). The claims in this case and the procedural history of the case have been detailed in other orders of the Court. *See, e.g., Westefer v. Snyder*, 725 F. Supp. 2d 735 (S.D. Ill. 2010); *Westefer v. Snyder*, Civil Nos. 00-162-GPM, 00-708-GPM, 2009 WL 2905548 (S.D. Ill. Sept. 4, 2009). Thus, the Court will not repeat that recitation here. In brief, this case is principally a class action brought by and on behalf of prisoners in the custody of the Illinois Department of Corrections ("IDOC") to challenge the adequacy under the due process clause of the Fourteenth Amendment of the procedures employed

by the IDOC to place prisoners in the closed maximum security prison ("supermax prison") at the Tamms Correctional Center ("Tamms").[1] The Court entered judgment in this case on July 20, 2010. Snyder, Washington, Neal, DeTella, O'Leary, Page, Clark, Cowan, Ahitow, Walker, Zimmerman, Hulick, Battaglia, and Jones are past and present officers and employees of the IDOC. Wallace is a prisoner in IDOC custody who currently is serving a sentence of life imprisonment at the supermax prison at Tamms for murder.

In Wallace's motion to intervene he alleges that he is: not permitted to hold a job; subject to a "razor and clipper" restriction, meaning he is not permitted to have a razor or clippers in his cell; confined in his cell twenty-three hours a day; not allowed to receive visits; and not permitted to subscribe to newspapers and magazines. Also, Wallace complains that the library at the supermax prison at Tamms is inadequate. In his motion for a TRO Wallace claims that prison officials at Tamms have discontinued barber services and library services for prisoners incarcerated in the supermax prison. Defendants in turn have requested that Wallace's motion to intervene and motion for a TRO be stricken. Rule 12 of the Federal Rules of Civil Procedure provides, in pertinent part, that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The rule provides further that "[t]he court may act: (1) on its own; or (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." *Id*. A Rule 12 motion to strike may be directed only to a pleading, as "pleadings" are defined under Rule 7 of the

---

1. The Court says that this case is "principally" a class action concerning due process violations by the IDOC because a number of the class representatives in this case also prosecuted individual claims of having been transferred to the supermax prison at Tamms in retaliation for exercising their First Amendment right to file grievances and lawsuits challenging the conditions of their confinement in IDOC custody.

Federal Rules of Civil Procedure, and not to a motion or a paper other than a pleading. *See Granger v. Gill Abstract Corp.*, 566 F. Supp. 2d 323, 334-35 (S.D.N.Y. 2008). Nevertheless, the Court has inherent power to strike documents other than pleadings. *See Kremers v. Coca-Cola Co.*, 714 F. Supp. 2d 912, 915 n.1 (S.D. Ill. 2009) (citing *Kitson v. Bank of Edwardsville*, 240 F.R.D. 610, 611 (S.D. Ill. 2006)).

Regarding intervention, Rule 23 of the Federal Rules of Civil Procedure permits intervention in a class action by unnamed members of the class. *See* Fed. R. Civ. P. 23(d)(1)(B)(iii); *Diduck v. Kaszycki & Sons Contractors, Inc.*, 147 F.R.D. 60, 62 (S.D.N.Y. 1993). However, to intervene, a class member must satisfy the requirements of Rule 24 of the Federal Rules of Civil Procedure. *See Deutschman v. Beneficial Corp.*, 132 F.R.D. 359, 380-81 (D. Del. 1990). Concerning intervention as of right, Rule 24 states, in relevant part,

> On timely motion, the court must permit anyone to intervene who:
> (1) is given an unconditional right to intervene by a federal statute; or
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a). With respect to permissive intervention, Rule 24 provides, in relevant part, that "[o]n timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). Under Rule 24(a), a proposed intervenor as of right must satisfy four requirements: (1) a timely application for leave to intervene; (2) a claim of interest relating to the property or transaction that is the subject of an action; (3) a danger that disposition of the action may as a practical matter diminish the applicant's ability

to protect that interest; and (4) existing parties to a case will not adequately represent the applicant's interest. *See Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 945-46 (7th Cir. 2000); *Southmark Corp. v. Cagan*, 950 F.2d 416, 418 (7th Cir. 1991). Failure to satisfy any one of the four requirements is fatal to a request for intervention as of right. *See Reid L. v. Illinois State Bd. of Educ.*, 289 F.3d 1009, 1017 (7th Cir. 2002). As to permissive intervention, a district court has "'considerable discretion'" in this area, and "reversal of a court's denial of a Rule 24(b) motion for permissive intervention 'is a very rare bird indeed.'" *Griffith v. University Hosp., L.L.C.*, 249 F.3d 658, 661-62 (7th Cir. 2001) (quoting *EEOC v. National Children's Ctr., Inc.*, 146 F.3d 1042, 1048 (D.C. Cir. 1998)).

Turning first to the matter of intervention as of right, no federal statute gives Wallace an unconditional right to intervene in this case, and therefore the relevant inquiry is whether Wallace has established a right to intervene under Rule 24(a)(2). The Court finds that he has not. In regard to the requirement of timeliness, factors to be considered in determining if a motion to intervene is timely are: (1) the length of time the intervenor knew or should have known of his or her interest in a case; (2) the prejudice to an original party caused by the delay; (3) the resulting prejudice to the intervenor if the motion is denied; and (4) any unusual circumstances. *See Shea v. Angulo*, 19 F.3d 343, 348-49 (7th Cir. 1994); *Schultz v. Connery*, 863 F.2d 551, 553 (7th Cir. 1988). Also, "any substantial lapse of time weighs heavily against intervention." *United States v. State of Wash.*, 86 F.3d 1499, 1503 (9th Cir. 1996) (affirming a denial of a motion for intervention as of right that was made three months after the district court rendered a judgment on the merits in a case). *Cf. Larson v. JPMorgan Chase & Co.*, 530 F.3d 578, 583-84 (7th Cir. 2008) (affirming a trial court's determination that a delay of over three years in seeking intervention in a class action rendered the

application for intervention untimely). This litigation has been pending for over ten years and is well-known to prisoners at Tamms; indeed, even the general public has some familiarity with this case. It obviously is highly prejudicial to the original parties to this case for Wallace to begin trying to litigate new claims that previously never have been at issue in this case at this very late stage of the proceedings. Wallace will not be prejudiced by denial of his request for intervention as untimely because, as will be discussed in a bit more detail presently, the claims he is trying to assert have nothing to do with the subject matter of this case. Finally, Wallace offers no explanation for his delay in seeking to intervene. Under the circumstances, then, the Court finds that his application for intervention is untimely.

Moreover, no interest of Wallace's will be impaired by a denial of intervention. In general, an intervenor's interest will not be impaired or impeded within the meaning of Rule 24(a) if the disposition of an action will not preclude the intervenor from bringing suit in another forum to enforce a claim. "'The existence of 'impairment' depends on whether the decision of a legal question involved in the action would as a practical matter foreclose rights of the proposed intervenors in a subsequent proceeding'" and "[t]he possibility of foreclosure is measured by the standards of *stare decisis*." American Nat'l Bank & Trust Co. of Chicago v. City of Chicago, 865 F.2d 144, 147-48 (7th Cir. 1989) (quoting *Meridian Homes Corp. v. Nicholas W. Prassas & Co*., 683 F.2d 201, 204 (7th Cir. 1982)). Here the Court's judgment in this case will have no preclusive effect at all on the claims Wallace is attempting to assert in this case, because Wallace's claims have no bearing on the subject matter of this case. As Wallace appears not to understand, the only question that has ever been at issue in this case is whether IDOC prisoners have a due process right not to be transferred to the supermax prison at Tamms without notice and an opportunity to be heard.

In general, a state prisoner has a Fourteenth Amendment liberty interest in avoiding conditions of confinement at a supermax prison where conditions at such a prison impose "an atypical and significant hardship within the correctional context." *Wilkinson v. Austin*, 545 U.S. 209, 224 (2005) (citing *Sandin v. Conner*, 515 U.S. 472, 483 (1995)). In this case, the Court has been required to examine conditions of confinement at the supermax prison at Tamms in detail, in order to determine whether those conditions are so harsh as to give IDOC prisoners a liberty interest in avoiding transfer to that prison. *See Westefer*, 725 F. Supp. 2d at 742-69. However, matters like the legality of policies at the supermax prison at Tamms regarding barber services, restrictions on visitation and personal property such as newspapers and magazines, etc., have never been at issue in this case. Wallace is trying to turn this case into something it is not and never has been, namely, an inquiry into the constitutionality of the various restrictions that incarceration in the supermax prison at Tamms imposes on prisoners in IDOC custody, and Wallace will have to pursue that inquiry in a different lawsuit. Having concluded that Wallace may not intervene as of right, the Court also denies permissive intervention. In the class-action context, permissive intervention should be allowed "when no additional issues are presented to the case, when the intervenor's claims are 'virtually identical' to class claims, and when intervention would strengthen the adequacy of class representation." *Eckert v. Equitable Life Assurance Soc'y of U.S.*, 227 F.R.D. 60, 64 (E.D.N.Y. 2005) (quoting Herbert Newberg & Alba Conte, Newberg on Class Actions § 16:8 (4th ed. 2002)). Here, as discussed, the issues that Wallace seeks to introduce into this case about the validity of various restrictions placed on prisoners incarcerated in the supermax prison at Tamms are completely extraneous to the subject matter of this case. Wallace's request to intervene in these proceedings will be denied.

The Court takes up next the matter of whether Wallace should be assigned a "strike" for the denial of his motion to intervene in this case. Under 28 U.S.C. § 1915, a prisoner acquires a "strike" each time an action brought by the prisoner in a federal court while incarcerated or detained in any facility is dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). Once a prisoner has acquired three such "strikes," the prisoner may not proceed in forma pauperis in federal court without prepayment of filing fees or security therefor unless the prisoner is under imminent danger of serious physical injury. *See id.*; *Taylor v. Watkins*, 623 F.3d 483, 484 (7th Cir. 2010). The Court concludes that bringing a complaint in intervention constitutes bringing an "action" within the meaning of Section 1915(g). Under Rule 24, a motion to intervene in an action must be served on the original parties to the action as provided under Rule 5 of the Federal Rules of Civil Procedure and "must . . . be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). Just as intervention is commenced by the filing of a complaint, so once leave to intervene has been granted, "[u]nless conditions have been imposed [upon intervention], the intervenor is treated as if the intervenor were an original party and has equal standing with the original parties." 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1920 (3d ed. 1998 & Supp. 2010) (collecting cases). *See also Alvarado v. J.C. Penney Co.*, 997 F.2d 803, 805 (10th Cir. 1993) (noting that "[w]hen a party intervenes, it becomes a full participant in the lawsuit and is treated just as if it were an original party" and that by intervening the intervenor renders himself or herself "vulnerable to complete adjudication . . . of the issues in litigation between the [intervenor] and the adverse party."). In other words, a party asserting a claim in intervention is seeking in effect to become a plaintiff in the action in which he or she seeks to

intervene. For purposes of the "three-strikes" rule of Section 1915(g), there is no functional difference between a plaintiff in intervention and a plaintiff bringing an original action. Accordingly, a prisoner whose motion to intervene in an action and complaint in intervention are rejected by a federal court should be deemed to have accumulated a "strike" under Section 1915(g). *See Boriboune v. Berge*, 391 F.3d 852, 855-56 (7th Cir. 2004) (recognizing that under Section 1915 the claims of every plaintiff in a lawsuit brought by prisoners must be counted; thus, a group of prisoners may join their claims in a single complaint, but each prisoner plaintiff must pay a full filing fee for the action).

Moreover, the Court notes that quite frequently prisoner litigants deliberately abuse the device of intervention in an attempt to avoid the strictures of the "three-strikes" rule of 28 U.S.C. § 1915(g) through the simple expedient of intervening in pending cases, rather than bringing their own lawsuits. *See Westefer v. Snyder*, Civil Nos. 00-162-GPM, 00-708-GPM, 2011 WL 9135, at **1-2 (S.D. Ill. Jan. 1, 2011) (refusing to permit a prisoner litigant with three "strikes" under Section 1915(g) to evade the "three-strikes" rule by pursuing struck-out claims as an intervenor in this case); *In re Profiler Prods. Liab. Litig.*, MDL No. 06-1748-GPM, 2010 WL 3613928, at *2 (S.D. Ill. Sept. 8, 2010) (rejecting an attempt by an infamous vexatious prisoner litigant "to evade . . . the so-called 'three-strikes rule,' by trying to intervene in other people's cases," and imposing a ban in this Court on further filings by the proposed intervenor); *Geenen v. Salazar*, Civ. 07-5070-JLV, 2010 WL 3363385, at **1-2 (D.S.D. Aug. 25, 2010) (assessing a "struck-out" prisoner a "strike" for filing a frivolous request for intervention in a pending case); *Alcindor v. Wooden*, Civil Action No. 4:10CV-P78-M, 2010 WL 2650923, at *1 n.1 (W.D. Ky. June 30, 2010) (noting that a notorious "struck-out" prisoner litigant had filed seventeen

cases and sought to intervene in five cases in the district where the court sat). In this connection, it is worth noting that Wallace has managed to accumulate two "strikes" under Section 1915(g) in this Court. *See Wallace v. Hallam*, Civil No. 09-418-DRH (S.D. Ill. Feb. 23, 2010) (order dismissing action for failure to state a claim upon which relief may be granted); *Wallace v. Powers*, Civil No. 09-224-DRH (S.D. Ill. Nov. 19, 2009) (same). This suggests to the Court that Wallace's motive for trying to intervene in this case is to avoid the "three-strikes" rule set out in Section 1915(g). Applying the requirements of Section 1915(g) to a prisoner attempting to avoid the strictures of that statute through the device of intervention is consistent with the purpose of Section 1915(g), namely, "to reduce, not increase, the number of frivolous suits" brought by prisoners. *Lee v. Clinton*, 209 F.3d 1025, 1026 (7th Cir. 2000). *See also Walker v. O'Brien*, 216 F.3d 626, 628 (7th Cir. 2000) (noting that the enactment in Section 1915 of various "gatekeeping mechanisms designed to keep frivolous suits out of the federal courts" ushered in "a new and far more restrictive era for prisoner litigation"); *Turner-El v. Page*, No. 97 C 1818, 97 C 5822, 1998 WL 42299, at *2 (N.D. Ill. Jan. 27, 1998) (holding that retroactive application of the "three-strikes" provision of Section 1915(g) to lawsuits brought by prisoners that were dismissed before the enactment of the provision "advanc[es] . . . the congressional goal of reducing frivolous prisoner litigation in federal court" that is embodied in the "three-strikes" rule). In this case Wallace is abusing the device of intervention to avoid the "three-strikes" rule for the purpose of trying frivolously to disrupt the proceedings in an important case by asserting specious claims that have nothing to do with the subject matter of this litigation. The Court finds that it is eminently proper to assign Wallace a "strike" under Section 1915(g) for his frivolous attempt to intervene as a plaintiff in these proceedings.

Finally, the Court takes up the issue of whether to restrict Wallace's ability to file papers in this case. Naturally, "[e]very paper filed with the Clerk of this Court, no matter how repetitious or frivolous, requires some portion of the institution's limited resources." *In re McDonald*, 489 U.S. 180, 184 (1989). *See also United States ex rel. Verdone v. Circuit Court for Taylor County*, 73 F.3d 669, 671 (7th Cir. 1995) ("Frivolous, vexatious, and repeated filings by pro se litigants interfere with the orderly administration of justice by diverting scarce judicial resources from cases having merit and filed by litigants willing to follow court orders."). The Court has been obliged, of course, to expend resources to dispose of Wallace's frivolous filings in this case, and the Court has every reason to suppose that Wallace intends to keep filing frivolous papers in this case, if he can. It is "[a] part of the Court's responsibility . . . to see that [the Court's] resources are allocated in a way that promotes the interests of justice" and, correspondingly, "[f]ederal courts have both the inherent power and constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions." *McDonald*, 489 U.S. at 184 & n.8. The United States Court of Appeals for the Seventh Circuit has approved the use of filing restrictions against vexatious litigants. *See, e.g., Carr v. Tillery*, 591 F.3d 909, 920 (7th Cir. 2010) (orders barring vexatious litigants from filing new papers without court approval "are standard remedies for misconduct in litigation"); *Support Sys. Int'l, Inc. v. Mack*, 45 F.3d 185, 186-87 (7th Cir. 1995) (barring a vexatious pro se litigant from filing new papers in the federal courts of the Seventh Circuit for a period of two years); *Miller v. United States*, 868 F.2d 236, 241-42 (7th Cir. 1989) (upholding a district court's order requiring a vexatious litigant to obtain prior leave of court before filing new papers); *Lysiak v. C.I.R.*, 816 F.2d 311, 313 (7th Cir. 1987) ("A court faced with a litigant engaged in a pattern of frivolous litigation has the authority to implement a remedy that may include restrictions on that

litigant's access to the court."). The Court will impose an appropriate restriction on Wallace's ability to file new papers in this case.

To conclude, it is hereby **ORDERED** that the motions to strike brought by Defendants Snyder, Washington, Neal, DeTella, O'Leary, Page, Clark, Cowan, Ahitow, Walker, Zimmerman, Hulick, Battaglia, and Jones (Doc. 603, Doc. 607) are **GRANTED** and Wallace's motion to intervene (Doc. 601) and motion for a TRO (Doc. 602) are **STRICKEN** from the record of this case. Wallace is advised that the denial of his motion to intervene will count as one of his three allotted "strikes" under 28 U.S.C. § 1915(g). It is **further ORDERED** that henceforth the Clerk of Court shall submit any further papers that Wallace may attempt to file in this case to the undersigned District Judge for preliminary review before the papers can be filed. If the papers are determined by the undersigned District Judge or his staff to be irrelevant to the matters at issue in this case, or if the papers otherwise are frivolous or vexatious, the Clerk of Court shall return the papers to Wallace unfiled. This filing restriction on Wallace does not extend to a notice of appeal from this Order.[2]

**IT IS SO ORDERED.**

DATED: February 25, 2011

/s/ G. Patrick Murphy
G. PATRICK MURPHY
United States District Judge

---

2. The Court notes in passing that Defendants have appealed from the Court's judgment in this case. The filing of a notice of appeal in a case generally divests a district court of jurisdiction as to the matters that are on appeal. *See Kusay v. United States*, 62 F.3d 192, 193-94 (7th Cir. 1995). As discussed, the issues presented by Wallace's attempt to intervene in this case are irrelevant to the subject matter of the case; therefore, the attempt to intervene is collateral to the matters on appeal and within this Court's jurisdiction. *See id*.