IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT WESTEFER, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | )  CIVIL NO. 00-162-GPM |
| | ) |
| DONALD SNYDER, *et al.*, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

This Order will dispose of the two remaining matters in this thirteen year old case, mootness and fees. Defendants want to vacate an earlier Injunction (Doc. 637) against them because there is no longer a Tamms prison, which was the occasion for the Injunction (*See* Doc. 646). And, the amount of attorneys' fees Plaintiffs' counsel has requested for their efforts is disputed (*See* Docs. 569, 588, 595).

## Procedural History

A brief procedural summary will be helpful to what follows. Plaintiffs' class consists of all prisoners in the custody of the Illinois Department of Corrections ("IDOC") who have been or who may be transferred to the closed maximum security prison ("supermax prsion") at Tamms Correctional Center ("Tamms"). Defendants are present and former officials and employees of the IDOC.

Plaintiffs, pursuant to 42 U.S.C § 1983, alleged that Defendants violated their right to procedural due process under the Fourteenth Amendment to the Constitution by employing

1

constitutionally inadequate procedures when assigning IDOC inmates to the supermax prison at Tamms. On July 20, 2010, this Court issued an Injunction, which included findings of fact and conclusions of law with respect to the class-wide procedural due process claims (Doc. 540). The Court found the conditions at Tamms imposed an atypical and significant hardship on inmates, which thus gave rise to a due process liberty interest in avoiding transfer to the prison (Doc. 540). The Court found IDOC's procedures for making transfer decisions constitutionally deficient and entered an Injunction, which articulated the procedures IDOC was to follow in remedying this problem (Doc. 540).

Defendants appealed the Court's decision, challenging *only the terms* of the Court's Injunction. *See Westefer v. Neal*, 682 F.3d 679 (7th Cir. 2012). On June 6, 2012, the United States Court of Appeals for the Seventh Circuit found that the Court's Injunction (Doc. 540) was overly broad and imposed requirements beyond the scope of the Prison Litigation Reform Act ("PLRA"). *Westefer*, 682 F.3d at 682 (The Court's Injunction "eliminates the operational discretion and flexibility of Illinois prison administrators, *far exceeding* what due process requires and violating the mandate of the PLRA.") (emphasis added). This Court received the matter on remand with instructions to enter a *new injunction* consistent with the Seventh Circuit Opinion that remanded the case. *Id*. at 686.

Once back in the district court, Plaintiffs filed a new motion for injunctive relief (Doc. 628). The Illinois Governor had taken affirmative steps to shut down the supermax prison at Tamms, and the Defendants argued Plaintiffs' motion should be denied as moot (Doc. 631). At the time, the Governor of Illinois had just vetoed money appropriated by the Illinois Legislature aimed at continuing to fund operations at Tamms (Doc. 631).

The Court did not find Defendants' argument on the issue of mootness persuasive (*See* Doc. 633). Although Tamms' days appeared numbered, the prison remained open and inmates continued to reside there. The Court ordered Defendants to prepare and submit a proposed remedial plan that would provide due process to Plaintiffs and comport with the Seventh Circuit Opinion remanding this case (Doc. 634). On October 15, 2012, the Court adopted Defendants' proposed remedial plan (Doc. 637).

## Analysis

### a. *Defendants' Motion to Vacate the Court's Injunction*

The present motion to vacate (Doc. 646) is aimed at undoing the *last* Injunction proposed by Defendants and adopted by the Court. Defendants' argument hinges on the fact that IDOC has now transferred all inmates out of the supermax prison at Tamms (Doc. 647-1, Affidavit of Greg Lambert). Moreover, the lawsuit filed by the American Federation of State County and Municipal Employees ("AFSCME") designed to stop the closing of Tamms was scotched by the Illinois Supreme Court. *Weems v. Appellate Court, Fifth District*, Illinois Supreme Court Supervisory Order Number 115240 (Dec. 11, 2012), available at:
 http://www.state.il.us/court/SupremeCourt/Announce/2012/121112_2.pdf.

The lawsuit by AFSCME, filed in the Illinois Circuit Court of Alexander County, sought a preliminary injunction to prevent the closure of Tamms because of a collective bargaining agreement between AFSCME and the State of Illinois. The Supreme Court of Illinois ordered the Alexander County Circuit Court to vacate the preliminary injunction it had entered. *Id*. ("[R]emanding the case to the Circuit Court of Alexander County with directions to dissolve the preliminary injunction entered on October 10, 2012 in American Federation of State County and Municipal Employees, Council 31 v. Weems et al., Alexander County No. 12 MR 43.").

Plaintiffs argue that while the state court preliminary injunction has been vacated, the litigation remains ongoing (Doc. 649). The argument is that *if* Tamms should reopen and *if* prisoners are again transferred back to Tamms, the prisoners should get a hearing, pursuant to the Court's previous Injunction (Doc. 649). There are too many "ifs" in Plaintiffs' argument; even one is too many. The Court must pass on the issues in front of it here and now; there are no advisory opinions. This is a fundamental principle the Supreme Court advised against many years ago. *See Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 241-42 (1937) (A case or controversy requires "a dispute between parties who face each other . . ." and must be "definite and concrete, not hypothetical or abstract.").

The PLRA requires relief to be narrowly drawn, extend no further than necessary to correct the violation of federal rights, and be the least intrusive means necessary to correct the violation. 18 U.S.C. § 3626(a)(1)(A). The super max prison at Tamms is closed and all prisoners have been transferred to different facilities. A remedial plan is no longer necessary because there is nothing to remedy. No prisoner can be transferred to Tamms so long as it is closed. Defendants' motion to vacate this Court's previous Injunction (Doc. 646) is **GRANTED**. The Clerk of the Court is **DIRECTED** to **VACATE** this Court's Order at Document 637.

b. *Plaintiffs' Motion for Attorneys' Fees*

Finally, Plaintiffs' motion for attorneys' fees and costs (Doc. 569) is ripe for consideration. Plaintiffs seek an award of attorneys' fees and non-taxable costs in the aggregate amount of $1,142,419.63: $657,225.86 in attorneys' fees and costs for the Uptown People's Law Center along with $485,193.77 for attorneys' fees and costs for DLA Piper (Doc. 569). Defendants object to the amount claimed (Docs. 588, 589).

The Court notified the parties it was considering the appointment of a Special Master to determine the attorneys' fees and costs to be awarded pursuant to 42 U.S.C. § 1988(b) and invited the parties to comment on the terms of appointment (Doc. 566).  There were comments (Docs. 585, 586) and a hearing followed (Doc. 597).  The Court then appointed attorney Gerald Ortbals to serve as Special Master (Doc. 606).

On November 1, 2012, the Special Master submitted his Report to both parties (Doc. 653-1).  Each party received more than ample time to file their objections to the Special Master's Report (Doc. 643).  On March 6, 2013, the Special Master filed his Response to Plaintiffs' objections (Doc. 650)[1].  The Special Master's Response declared his November 1st Report final as to all recommendations except a revision on costs (Doc. 650).  The Special Master's Report and Response, together, contain the final recommendation on attorneys' fees and costs. Plaintiffs have lodged objections to the Special Master's recommendation (Doc. 653).  Defendants are satisfied with the Special Master's recommendation for attorneys' fees and costs (Doc. 654).

In this Court's Memorandum and Order appointing the Special Master (Doc. 606), it was noted that any findings of fact, conclusions of law, or recommendations made by the Special Master, which are subject to an objection would be reviewed *de novo*.  Accordingly, the Court will examine the Special Master's Report and Response to the motion for attorneys' fees with "fresh consideration to those issues to which *specific* objections have been made." 12 Charles Alan Wright et al., *Federal Practice and Procedure* § 3076.8 at p.55 (1st ed. 1973) (1992 Pocket Part) (emphasis added).  In other words, under a *de novo* examination the Court will *not* give the Special Master's Report and Response any form of deference.  *Salve Regina Coll. v. Russell*, 499

---

[1] The Special Master first filed his Response to Plaintiffs' objections on March 4, 2013 (Doc. 648).  However, due to technical and typographical errors, the Special Master filed a "corrected" Response to Plaintiffs' objections on March 6, 2013 (Doc. 650).  The corrected response is the operative response here and throughout the ensuing Memorandum and Order, the Court's examination will be of the corrected Response.

U.S. 225, 238 (1991).

After a fresh look at all the relevant papers for the instant motion (Doc. 569) the Court **ADOPTS** the Special Master's recommendation in full: People's Uptown Law Center is entitled to **$215,000.00** in attorneys' fees, **$19,450.04** in taxable costs, and **$7,049.06** in non-taxable costs.  DLA Piper is entitled to **$56,349.50** for its out-of-pocket expenses.

### *i. People's Uptown Law Center*

The analysis of what is an appropriate award of attorneys' fees begins with 42 U.S.C. § 1997e(d), which states that:

> (1) In any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988 of this title, such fees shall not be awarded except to the extent that –
>
>   (A) the fee was directly and reasonably incurred in proving an actual violation of the plaintiffs rights protected by a statute pursuant to which a fee may be awarded under section 1988 of this title; and
>
>   (B) (i) the amount of the fee is proportionately related to the court ordered relief for the violation; or
>
>   (ii) the fee was directly and reasonably incurred in enforcing the relief ordered for the violation

42 U.S.C. § 1997e(d)(1)

Here, Plaintiffs prevailed.  But what is the result of this protracted litigation? The Plaintiffs want more than one million dollars in attorneys' fees (Doc. 569).  The Special Master's recommendation is roughly equivalent to 30% of this request.  The large disparity, and indeed *all* of Plaintiffs' objections, can be attributed to a disagreement on how to characterize the end result of this litigation.  Did Plaintiffs establish groundbreaking constitutional precedent for prisoners in Illinois and throughout the country?  Is the end result *de minimis*?  Does this case fall somewhere in between?

Substantial time and effort was spent on this case but the end result after thirteen years of litigation is *de minimis*. The Court did *not* establish groundbreaking precedent. Rather, the United States Court of Appeals for the Seventh Circuit held that the simple application of established constitutional precedents was all that was necessary. *Westefer*, 682 F.3d at 686 ("In short, the [district court's initial] injunction goes well beyond what the Supreme Court has said is constitutionally deficient."). Even if this Court's overly-broad injunction had been sustained, it is difficult to imagine things would have improved for Plaintiffs. This is so because, even given the application of full-throttled due process, the Plaintiffs at Tamms would have *remained* at Tamms. After fifteen years of prisoner suits from the super max prison at Tamms, this Court has not seen one prisoner -- not even one -- that was not appropriately designated to Tamms. Here, a cannon was fired to the end that a fly was slaughtered.

The next step then is to determine the correct methodology for calculating the amount of attorneys' fees to be awarded here. The Court agrees with the Special Master that a deviation from the lodestar methodology is the correct approach. Plaintiffs are certainly right in their claim that Supreme Court, in *Blanchard v. Bergeron*, 489 U.S. 87, 94-95 (1989), called the lodestar approach the "centerpiece of attorney's fee awards." However, a reading of *Bergeron* and the Supreme Court's reliance on *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) in *Bergeron* informs this Court the lodestar approach is not the end-all be-all in calculating an award for attorneys' fees. *Id.* at 96 ("And we have said repeatedly that '[t]he initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.' *Blum v. Stenson*, 465 U.S. 886, 888, 104 S.Ct 1541, 1544. 79 L. Ed. 2d 891 (1984). The courts may then adjust this lodestar calculation by other factors."); *see also Hensley*, 461 U.S. at 434 ("The product of reasonable

hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of 'results obtained.' This factor is particularly crucial where a plaintiff is deemed "prevailing" even though he succeeded on only some of his claims for relief.").

Several years after *Bergeron* and *Hensley*, the Supreme Court reiterated its opinion that the lodestar approach does not end the analysis, but rather begins the inquiry. *See Farrar v. Hobby*, 506 U.S. 103 (1992). In *Farrar* the Court noted the most significant factor in determining a reasonable award for attorneys' fees is the success obtained by the prevailing party. *Id*. at 114. If the success obtained by the prevailing party is nominal or *de minimis*, a court "may lawfully award *low fees or no fees* without reciting the 12 factors bearing on reasonableness." *Id*. at 115 (emphasis added). The *Farrar* Court could have been speaking directly to this case when the Court noted "that if 'a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.'" *Id*. at 114 (quoting *Hensley,* 461 U.S. at 762).

The Special Master is correct in his assessment that counsel put forth an undoubtedly massive effort on behalf of Plaintiffs, which is the basis for their fee claim. But, the effort and requested fee is way out of line with the minimal relief that was finally obtained. *See Farrar,* 506 U.S. at 114, (quoting *Hewitt v. Helms*, 482 U.S. 755, 762 (1987)) ("This litigation accomplished little beyond giving petitioners 'the moral satisfaction of knowing that a federal court concluded that [their] rights had been violated' in some unspecified way.").

This Order, which also vacates the existing Injunction as moot simply underscores the marginal result of this litigation. The supermax prison at Tamms is closed. Even a remedial plan is no longer necessary because all of the prisoners have been transferred from Tamms to

various facilities in Illinois. None of this, however, is a result of this litigation. Rather, the closure of Tamms is a product of the woeful financial condition of the State of Illinois.

In conclusion, Plaintiffs' objections are without merit and the Court adopts the Special Master's Report insofar as it relates to the People's Uptown Law Center. The lodestar approach would result in an excessive and disproportional award of attorneys' fees in light of the minimal result of this case. People's Uptown Law Center shall receive **$215,000.00** in attorneys' fees, **$19,450.04** in taxable costs, and **$7,049.06** in non-taxable costs.

### *ii. DLA Piper*

Plaintiffs also object to the Special Master's recommendation that no fee should be awarded to DLA Piper, only out-of-pocket expenses (Doc. 653, § D). All of the preceding analysis applies here regarding the Court's decision not to employ a lodestar approach.

Plaintiffs' central argument in support of DLA Piper's attorneys' fees begins with the premise that lodestar is appropriate. Since the lodestar approach is not proper here, Plaintiffs' argument is unavailing. However, there is the additional wrinkle of how DLA Piper's *pro bono* commitment to this case factors into the equation.

An award of attorneys' fees in a case such as this is vested in the Court's discretion. *See Hensley*, 461 U.S. at 446 ("Yet Congress also took steps to ensure that § 1988 did not become a 'relief fund for lawyers.'" It left the "district courts with discretion to set the precise award in individual cases and to deny fees entirely in 'special circumstances' when an award would be 'unjust even if the plaintiff prevailed".) (internal citations omitted). Indeed, the Seventh Circuit Court of Appeals has also explained the rationale behind its deferential standard in reviewing a district court's award of attorneys' fees in cases such as this. *See Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632 (7th Cir. 2011). The *Pickett* Court reasoned as follows:

> [w]e accord this significance deference to the district court because: "(1) it possesses 'superior understanding of the litigation and [there exists a] desirability of avoiding frequent appellate review of what essentially are factual matters'; (2) the need for uniformity in attorneys' fees awards is not great enough to warrant appellate review of minutia; and (3) the desirability of avoiding 'a second major litigation' strictly over attorneys' fees is high." *Spellan v. Bd. of Educ. for Dist. 111,* 59 F.3d 642, 645 (7th Cir.1995).

*Pickett,* 664 F.3d at 639. Given the Court's close proximity to this case for the past thirteen years, DLA Piper's *pro bono* commitment must be an additional factor to consider in determining what, if anything, is an appropriate award of attorneys' fees.

Initially, DLA Piper engaged in this litigation on a *pro bono* basis. It now asks the Court for an award of $485,193.77 for attorneys' fees, paralegal fees, and expenses. DLA Piper has taken great lengths to publicize its *pro bono* efforts in this case. In 2010, DLA Piper issued three press releases boasting of the prestigious *pro bono* awards and honors their attorneys have received as a result of this litigation. *See* http://www.dlapiper.com/dla-piper-successfully-represents-plaintiff-class-in-constitutional-rights-case-07-30-2010/; http://www.dlapiper.com/wojcik_pro-bono_award_release/; http://www.dlapiper.com/wojcik_release/, (last visited Mar. 27, 2013). The goodwill and recognition DLA Piper has received from the public, the legal community and its client base as a result of this case is immeasurable.

DLA Piper's request for nearly a half million dollars in attorneys' fees contradicts its self-proclaimed "donation" of hundreds of hours of *pro bono* work. Actually, DLA Piper's position is awkward and the Special Master's observation was spot on: *pro bono* should be made of sterner stuff. This Court must insist DLA Piper's commitment to *pro bono* stand on a sturdier crutch. All of the goodwill and prestige that have been bestowed on DLA Piper for its role in this case, when considered against the *de minimis* end result of the litigation militates against an

award of attorneys' fees.

The Special Master's recommendation is not intended for general application to fee requests by *pro bono* counsel (Doc. 650). Rather, the recommendation is confined to DLA Piper's role in *this* case (Doc. 650). The Court finds this persuasive and thus adopts the position since careful consideration of DLA Piper's *pro bono* commitment has led to the conclusion that fees are inappropriate.

The Special Master also mentioned IDOC's dire financial condition. Plaintiffs say there is no authority that allows the Special Master or the Court to consider this as a factor. The Special Master was careful to note that "while most courts until now have *not* treated a government defendant's ability to pay (or not) as a 'special circumstance' it again seems likely *future awards* will take that into account." (Doc. 653-1, p. 7) (emphasis added). The Special Master simply intended to underscore the absurdity that *would* necessitate from an award of attorneys' fees to DLA Piper since the Pro Bono Institute's Principle 7 urges firms awarded a *pro bono* fee to donate the fee to an entity that provides services to persons of limited means. In sum, the result would be a donation to an undoubtedly cash strapped social service agency from the practically insolvent State of Illinois.

Plaintiffs' objections are without merit and the Court adopts the Special Master's Report insofar as it relates to DLA Piper. The lodestar approach would result in a disproportional award of attorneys' fees for DLA Piper given the result of this case. Moreover, DLA Piper's widely publicized role as *pro bono* attorneys for this case and the immeasurable goodwill it received as a result cut against an award of attorneys' fees. However, DLA Piper is entitled to **$56,349.50** for its out-of-pocket expenses.

### Conclusion

Defendants' motion to vacate this Court's previous Injunction (Doc. 646) is **GRANTED**. There are no longer any prisoners who reside at the supermax prison at Tamms. A remedial plan is no longer necessary. The Clerk of the Court is **DIRECTED** to **VACATE** this Court's previous Order at Document 637.

The Court **ADOPTS** the Special Master's Report and Response on Plaintiffs' motion for attorneys' fees. The lodestar approach is inappropriate when Plaintiffs' fee claim is examined in light of the final result of the litigation. The award of attorneys' fees is consistent with the PLRA's requirement that the fee proportionately relate to the court ordered relief. People's Uptown Law Center shall receive **$215,000.00** in attorneys' fees, **$19,450.04** in taxable costs, and **$7,049.06** in non-taxable costs. DLA Piper shall receive **$56,349.50** for its out-of-pocket expenses.

**IT IS SO ORDERED.**

**DATED**: March 27, 2013

/s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge